Charles E. MILLER and Ruby N. Miller, Respondents,

v.

Virgil V. ARCHDEKIN and Hilda P. Archdekin, Appellants.

No. 57164.

Supreme Court of Missouri, Division No. 1.

July 16, 1973.

Alden S. Lance, Savannah, for respondents, Charles E. Miller and Ruby N. Miller.

Brown, Douglas & Brown, R. A. Brown, St. Joseph, for appellants, Virgil V. Archdekin and Hilda P. Archdekin.

WELBORN, Commissioner.

Appeal by defendants from decree of trial court granting plaintiffs easement by prescription on land of defendants and enjoining defendants from interfering with plaintiffs' use of easement. (Notice of appeal filed prior to January 1, 1972.)

Before 1948, plaintiff Charles E. Miller and Bill Archdekin, father of defendant Virgil Archdekin, were owners of a tract of land in Andrew County. The land was bounded on the north by the C. B. & Q. Railroad right of way. A county road paralleled the railroad on its north line. In 1948, the property was divided between Miller and Archdekin, Miller receiving the west half of the tract and Archdekin the east half, each part containing some 90 acres. At the time of the division of the land, it was brush covered and swampy,

being bounded on the south by the Missouri River.

By 1956 both tracts had been cleared and farming operations began on them. Miller farmed his tract and defendant Virgil Archdekin farmed his father's tract.

Sometime between 1948 and 1956, a crossing had been opened from the county road, across the railroad tracks and into the Archdekin tract, some 300 feet east of the east line of the Miller tract. This crossing is known as the "Monkey Mountain" crossing. Miller claimed that he constructed the crossing shortly after the property was divided and that his access to his property from the time of its acquisition by him was through the gate at the Monkey Mountain crossing and then west on the Archdekin land, until he entered his tract near its northeast corner. On cross-examination, Miller acknowledged that the crossing might not have been opened until 1952 or 1954.

Virgil Archdekin testified that he opened the Monkey Mountain crossing around 1952. The railroad installed a gate at the crossing and Virgil placed a lock on the gate. He gave a key to Miller and asked him to keep the gate locked when he had used the crossing. Miller acknowledged that he obtained a key to the gate from Virgil. He testified that he knew Virgil wanted the gate locked and that "we tried our best to do it." He stated that he left the gate like he found it. His tenant knew that he was supposed to keep the gate locked.

Sometime in the late sixties, after talking to Virgil and getting his approval, Miller arranged a double lock on the gate. He had the keys to one and Virgil the other, but the opening of one lock unlocked the gate. This arrangement continued until late in 1970. At that time differences arose between Miller and Virgil about Miller's failure to close and lock the gate. Miller's lock was removed and he was no longer able to open the gate and use the crossing and go across Virgil's land to his. (Virgil had acquired his father's tract

around 1968, following the death of his parents.)

Virgil's denial of Miller's use of the gate resulted in this litigation.

Miller acknowledged the arrangements with Virgil about the locks on the gate. He testified that prior to the 1970 incident he had no trouble with either Virgil or his father. On cross-examination, the following exchange between Miller and defense counsel occurred:

"Q Let's go back. The entire time Bill Archdekin owned this you had no trouble with him. Correct?

"A That is right.

"Q He allowed you to use it as you have said before?

"A That is right.

"Q Then starting in '52 when Virgil took over the management for his family you had no trouble as you have described until late in the sixties?

"A Something like that, yes.

"Q Prior to that Virgil had even given you a key so you could get in and get out?

*  *  *  *  *  *

"A Yes, I think that was right."

Because of the conclusive nature of this testimony, there is no occasion for referring to other testimony presented in the case.

The trial court found for plaintiffs, making specific findings of adverse use by plaintiffs for a period of more than ten years. The trial court dismissed the question of use by permission by stating that defendant gave permission "as a renter. I don't know how he got authority to be giving people the right to go over the land as a renter, and we won't get into that."

Appellants attack the trial court's decree on the grounds that the uncontroverted evidence showed that plaintiffs' use of the right of way across defendants' land was permissive throughout the entire time following the opening of the crossing.

Review of the evidence shows that appellants' position on this issue is correct. By respondent Miller's own testimony, Bill Archdekin originally gave his permission to use the right of way and his use continued with the permission of Virgil until 1970. A permissive use cannot ripen into an easement. DeBold v. Leslie, 381 S.W.2d 816 (Mo.1964); Dalton v. Willis, 360 Mo. 329, 228 S.W.2d 709 (1950). There is no assertion here of any hostile claim of right such as would negate the originally granted permission. Pitzman v. Boyce, 111 Mo. 387, 19 S.W. 1104 (1892).

Respondents do not dispute that the evidence shows that their use was permissive. Instead, they rely upon the absence of any pleading of permissive use and assert that the appellants thereby waived any such claim as a defense to respondents' claim. No authority is cited in support of this proposition. Inasmuch as evidence of permissive use would show that plaintiffs' claimed cause of action never existed, it was properly admissible under a general denial. Nall v. Brennan, 324 Mo. 565, 23 S.W.2d 1053, 1056[1] (1929); Blumenkamp v. Tower Grove Bank & Trust Company, 483 S.W.2d 611 (Mo.App.1972).

Respondents have not attempted to support the trial court's conclusion that permission granted by a tenant cannot give rise to a permissive use which will negate a claim of adverse use. Such conclusion is erroneous. See 28 C.J.S. Easements § 14, p. 655 (1941).

Judgment reversed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.