Matthew and Brenda KIRKPATRICK, and William and Leigh Ann Kirkpatrick, Plaintiffs–Appellants,

v.

John T. WEBB, Defendant–Respondent.

No. 24309.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 30, 2001.

Scott A. Robbins, of Kennedy, Kennedy & Robbins, L.C., Poplar Bluff, MO, for Appellants.

Keith D. Sorrell, of Spain, Merrell & Miller, L.L.P., of Poplar Bluff, MO, for Respondent.

JAMES K. PREWITT, Judge.

Matthew and Brenda Kirkpatrick, and William and Leigh Ann Kirkpatrick ("Appellants") appeal from a judgment entered March 27, 2001 in which the trial court found in favor of John T. Webb ("Respondent") denying Appellants both a prescriptive easement and an easement by necessity for access to Appellants' property from the closest public road through Respondent's property.

Matthew and Brenda Kirkpatrick, and William and Leigh Ann Kirkpatrick are two married couples; Matthew and William are brothers. Appellants purchased property in Wayne County, Missouri in 1987 from Judy and Carl Laxton. Matthew and Brenda Kirkpatrick acquired title to the southern two-thirds of the tract (approximately 57 acres) and William and Leigh Ann Kirpatrick took title to the northern one-third (approximately 27 acres). Appellants did not purchase an easement when they purchased the property and Respondent was unaware of any recorded easement to the road at issue in his chain of title. None of the Appellants live on the property and the only structure is a shed on William Kirkpatrick's property. Appellants' primary use of their property is for hunting and target practice.

At the time of the petition and through the time of the trial, Respondent owned land directly to the west of Appellants' land. When Appellants purchased their land in 1987, Respondent was not the owner of the adjacent land. Missouri State Highway V borders Respondent's property to the west; thus, Respondent's land lies in between Appellants' land and State

Highway V, which is the closest public road to Appellants' property. Appellants therefore have no direct access to State Highway V or any other public road.

A gravel/dirt road, sometimes referred to at trial as the old Forest Service Road [1], exists that begins at State Highway V, runs across Respondent's property, and continues onto Appellants' property. Appellants used this road to gain access to their property from 1987 until 1999. In 1999, Respondent placed a gate across the road. Although the gate was unlocked, Appellants felt the gate restricted their access to the road. Respondent testified he never told Appellants nor anyone else they could not use the road, but Appellant Matthew Kirkpatrick testified that Respondent told them they could no longer use the road when he and William asked Respondent about the situation after the gate was put into place.

Prior to erecting the gate in 1999, Respondent built a road to the north of the old Forest Service Road, which also provides access from State Highway V to Appellant William Kirkpatrick's property (the northern tract of the two Kirkpatricks' property). After building this road, Respondent sold that northern portion of his property (approximately 60 acres), which included the road he built, to a Mr. Ruegg. Appellant William Kirkpatrick testified that he had used the road, but apparently not often, as he felt he and his brother did not have permission to do so. Appellant Matthew Kirkpatrick testified that he had never used that road.

Respondent testified that he built the road on the northern portion because he intended to build a home and the old Forest Service Road would be directly in front of the home. Those who used the old Forest Service Road, including Appellants and others, primarily were hunters and Respondent did not want that type of traffic right next to his house.

At trial, Respondent testified that he understood Appellants needed access to their property. Respondent told the court he was willing to give Appellants a free easement for up to twenty feet that would give them access through the southern part of his property, which would not be directly next to where he intended to build his new home.

A bench trial was held on January 16, 2001. Following the trial, Respondent sold his property. Based on that action, Appellants filed a Motion to Re-open the Evidence, but the trial court denied the motion and entered judgment against Appellants on March 27, 2001, finding there was neither an easement by prescription nor an easement by necessity. The trial court also denied Appellants' Motion for a New Trial on May 29, 2001. Appellants filed their timely Notice of Appeal on June 1, 2001.

Appellants' first point is that the trial court erred by finding they were not entitled to an easement by prescription. "We will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Anderson v. Mantel*, 49 S.W.3d 760, 763 (Mo.App.2001). "We view the evidence and permissible inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Id.* "[C]redibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimo-

---

**1.** While the old Forest Service Road is not the official name for this road, to avoid confusion between it and other roads, we will use the old Forest Service Road designation.

ny." *Black v. Simpson,* 4 S.W.3d 175, 177 (Mo.App.1999).

"An easement by prescription is established by use that is continuous, uninterrupted, visible, and adverse for a period of ten years." *Schrieber v. Aslinger,* 11 S.W.3d 816, 819 (Mo.App.2000). Existence of a prescriptive easement "must be proven by clear and convincing evidence." *Id.* Since Appellants claimed the easement, it was therefore their burden to establish "all of the essential requirements by clear and positive evidence." *Spier v. Brewer,* 958 S.W.2d 83, 86 (Mo.App.1997).

In Respondent's brief, he concedes that Appellants' use was uninterrupted, but contends none of the other elements were shown. While we may not agree that none of the other elements were shown, we do agree that the trial court could find that the Appellants failed in their burden to show the existence of all elements necessary to grant a prescriptive easement.

To meet the visible element, the party seeking the easement must show that the servient landowner had notice of the use and that the use was visible. *See Jacobs v. Roschevitz,* 20 S.W.3d 598, 600 (Mo.App.2000). Notice may be either actual or constructive, or inferred by the trial court from the facts. *See id.* "Visual, actual use commonly serves as notice to the landowner." *Id.* Testimony by Respondent confirmed that he had seen Appellants use the old Forest Service Road, and was aware that others, primarily hunters, used the road as well. Thus, the notice requirement was met.

Respondent admitted he had seen Appellants use the road. Respondents argue in their brief that the use of a prescriptive easement must also be visible to others. Acquiring prescriptive rights is similar to acquiring title by adverse possession. *See Jacobs,* 20 S.W.3d at 600. Therefore, we

look to the definition of visible under adverse possession for aid in determining what is necessary to meet the visible requirement for a prescriptive easement. The prescriptive easement requirement that the use be visible relates to the adverse possession requirement that the use be open and notorious. *See Weaver v. Helm,* 941 S.W.2d 801, 804 (Mo.App.1997) (stating requirements of adverse possession). The open and notorious requirement is met through " 'visible acts of ownership exercised over the premises.' " *Id.* (quoting *Kitterman v. Simrall,* 924 S.W.2d 872, 876 (Mo.App.1996)). That Respondent observed Appellants use the road is sufficient for the court to determine the visible element was met.

There was no dispute that Appellants had used the road from 1987 until the gate was placed over the road in 1999. However, "[l]ong continued use alone will not create a prescriptive right." *Spier,* 958 S.W.2d at 86. Appellant William Kirkpatrick testified that he used the road to get to his property approximately one hundred times from 1987 to 1999. There was no similar testimony from Appellant Matthew Kirkpatrick, but it was noted William Kirkpatrick's place of residence was Peidmont, Missouri, while Matthew Kirkpatrick lived near St. Louis. To be continuous, there must be "no break in the essential attitude of the mind required for adverse use." *Wells v. Carpenter,* 916 S.W.2d 405, 407 (Mo.App.1996) (quoting *Whittom v. Alexander–Richardson P'ship,* 851 S.W.2d 504, 508 (Mo.banc 1993)). Thus, we look to evidence presented on the adverse requirement.

Respondent testified that Appellants use of the old Forest Service Road was with his permission. "A permissive use cannot ripen into an easement." *Miller v. Archdekin,* 497 S.W.2d 178, 180 (Mo. 1973). If Appellants' use was permissive,

they would fail on the adverse requirement. *See Wells,* 916 S.W.2d at 406. "[T]o be considered adverse, it is not necessary for one to intend to violate the owner's rights." *Umphres v. J.R. Mayer Enterprises, Inc.,* 889 S.W.2d 86, 89 (Mo. App.1994). In addition, adverse does not necessarily mean hostile. *See Schrieber,* 11 S.W.3d at 819. "Adverse use for purposes of establishing an easement by prescription is non-recognition of the owner's authority to permit or prohibit use." *Id.*

Here, it would have been appropriate for the trial court to find there that the Appellants failed to present substantial, clear, and positive evidence that their use was adverse rather than permissive. While it may be true that Appellants never sought permission from either Respondent or the previous owner, they apparently did recognize Respondent's authority to permit or prohibit use. There was testimony that, if believed by the court, would have shown the use to have been permissive rather than adverse. As noted, Respondent testified that Appellants used the road with his permission. Appellant William Kirkpatrick testified that it was his understanding Respondent "didn't want us using the road" after the gate was placed across the road. Thus, the court could have appropriately found that Appellants did not meet their burden with regard to establishing adverse use of the road.

We also reach this result under the burden-shifting scheme of an earlier Southern District case. *See Bryant v. Price,* 893 S.W.2d 856, 860 (Mo.App.1995). "If ... the use has been open, continuous, visible and uninterrupted for ten years, a presumption is raised that the use was adverse and under a claim of right, and the burden to show that the use was in fact permissive rather than adverse is cast upon the landowner whose property would be burdened by the easement." *Id.* The Respondent's testimony that Appellants' use was permissive, if believed by the court, would have allowed Respondent to meet this burden and provided sufficient evidence to support the trial court's determination that Appellants' use was permissive rather than adverse.

Therefore, there were one or more elements essential to showing the existence of a prescriptive easement on which the trial court could have found that Appellants failed to meet their burden. Appellants' first point is denied and we affirm the trial court's denial of a prescriptive easement.

In Appellants' second point, they argue the trial court erred in its determination that the Appellants were not entitled to an easement by necessity. We address the trial court's conclusion under the same standard of review as point one.

Cases interpreting § 228.342, RSMo Supp.1999, place upon Appellants the burden of showing that they own the land, no public road goes through or is adjacent to their property, and the road sought is of strict necessity. *See Moss Springs Cemetery Ass'n v. Johannes,* 970 S.W.2d 372, 376 (Mo.App.1998). Recent cases have interpreted strict necessity to mean "the lack of a legally enforceable right to use a practicable way to and from a person's land, either public or private." *Anderson,* 49 S.W.3d at 763. " § 228.342 requires that [Appellants] prove the lack of such a right." *Wolfe v. Swopes,* 955 S.W.2d 600, 602 (Mo.App.1997). Convenience to the Appellants would not satisfy the strict necessity requirement. *See Anderson,* 49 S.W.3d at 763.

There is no dispute that the Appellants own the land for which they used the old Forest Service Road as an access. There is also no dispute that there is no other public road that goes through or is adjacent to their property. There is, however,

dispute as to whether Appellants have a legally enforceable right of access to their property.

■ As was noted in testimony, Respondent built another road north of the old Forest Service Road on property that he later sold to Mr. Ruegg. This private road also provides access from the public state highway to Appellant's William Kirkpatrick's property (the northern tract of the two Kirkpatricks' property). Appellants are correct that Respondent cannot defeat the notion of an easement by necessity simply because Appellants may be able to assert a claim against Ruegg for the use of the road on his property. *See Moss Springs Cemetery Ass'n*, 970 S.W.2d at 376–377.

■ The record shows the Appellants presented sufficient evidence to meet their burden of showing an easement by necessity. Appellants testified they did not feel they had permission to use the road on the Ruegg property. In recent cases, this has been sufficient to prove "the lack of a legally enforceable right." *Anderson*, 49 S.W.3d at 763; *see also Moss Springs Cemetery Ass'n*, 970 S.W.2d at 376.

In addition, evidence was established through Respondent's testimony that showed strict necessity. Appellants' property is landlocked with no public road access. In direct examination, Respondent was asked: "Now, you understand that the Kirkpatricks have to have some access back into their place?" Respondent replied, "I understand." Respondent went on to testify that he wanted Appellants (and other hunters that used the road) to cross in the southern portion of his property. "What I'd like to do is, I own the south side here—I'm willing to give them a free easement, won't cost them a dime, if they want a ten, twelve, up to a twenty foot easement right here."

In *Spier*, because the defendant servient landowner admitted in his answer to plaintiff's petition that plaintiff was entitled to a prescriptive easement across defendant's property, the appellate court ruled it was appropriate for the trial court to find plaintiff was entitled to the prescriptive easement. *See Spier*, 958 S.W.2d at 86. If the other elements of an easement by necessity are met, the analogy of the *Spier* case is appropriate. Weight in the overall determination of strict necessity should be given to the fact that Respondent understood Appellants' need to have access to a public road. Respondent's realization that his land was the primary barrier between Appellants' property and State Highway V is bolstered by his building of the road north of the old Forest Service Road and his offer to give a free easement for a road south of the old Forest Service Road.

§ 228.342, RSMo Supp.1999 does not require, once strict necessity is established, that the road be placed where Appellants would most like it to be placed. *See Anderson*, 49 S.W.3d at 763. "The statutory scheme explicitly requires that the private road established must be 'situated so as to do as little damage or injury and cause as little inconvenience as' practicable to the owners of the land over which it will pass.... [T]he private road must be one that is reasonable and practical." *Id.* (quoting *Hamai v. Witthaus*, 965 S.W.2d 379, 382 (Mo.App.1998)).

■ The weighing of the burdens and benefits to the owners of the dominant and servient property regarding the placement of the easement of necessity is for the trial court. *See Anderson*, 49 S.W.3d at 763. Once strict necessity is established, it is for the court to determine "[t]he issue of the general location of the private road." *Id.*

We agree with Appellants' second point and find that they met their burden and

there was substantial evidence presented under which the trial court should have found an easement by necessity and the trial court erred by denying the Appellants an easement by necessity.

The judgment is reversed and the cause remanded to the trial court on this point with instructions for it to address the issue of the location of the easement by necessity based on a finding that strict necessity exists for the Appellants and to otherwise proceed in a manner not inconsistent with this opinion.

GARRISON, P.J., and RAHMEYER, J., concur.