Bill Monaham and Pam Monaham, husband and wife, Earl Conner and Marge Conner, husband and wife, Gene Patterson and Anne Marie Patterson, husband and wife, Petitioners–Respondents,

v.

Robert QUIRK and Goldie June Quirk, husband and wife, and Darrell Guinn and Laura Guinn, husband and wife, Defendants–Appellants.

No. 24486.

Missouri Court of Appeals, Southern District, Division Two.

July 31, 2002.

Michael MOORE and Carolyn Moore, husband and wife, Ron Ewbank and Diane Ewbank, husband and wife, Ward Bond and Beverly Bond, husband and wife, Dan Pycior and Jolly Pycior, husband and wife, Bob Grover and Carol Grover, husband and wife,

Lisa C. Henderson, Buffalo, for Appellants.

John A. Parks, Hermitage, for Respondents.

NANCY STEFFEN RAHMEYER, Chief Judge.

In this court-tried case, an easement was granted in favor of members of a subdivision over a pathway located on two lots, one of which is owned by Robert and Goldie Quirk and the other is owned by Darrell and Laura Guinn ("Appellants"). Appellants were permanently enjoined from obstructing access to the pathway. Appellants contend that the trial court erred in that the evidence does not support a finding that the requirements for a prescriptive easement were met. An application of our standard of review to the evidence convinces us the judgment should be affirmed.

■ This court will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Kirkpatrick v. Webb*, 58 S.W.3d 903, 905 (Mo.App. S.D.2001). The evidence and all inferences are viewed in the light most favorable to the judgment, ignoring all contrary evidence and inferences and this court defers to the trial court's determination of witness credibility. *Id.* Next, we turn to the requirements for establishing a prescriptive easement.

■ A prescriptive easement "is established by use that is continuous, uninterrupted, visible, and adverse for a period of ten years." *Id.* at 906. A prescriptive easement must be proven by clear and convincing evidence. *Id.* To meet the requirement of the use being continuous, there must be no break in the attitude of the mind required for adverse possession. *Id.* Permissive use cannot be grounds for a prescriptive easement. *Id.* Adverse use does not necessarily mean hostile use, and it is not necessary for the users to intend to violate the owner's rights; rather, there must be "non-recognition of the owner's authority to permit or prohibit use." *Id.* at 907. Whether the use is such that a prescriptive easement is established is a fact question to be inferred from the circumstances of the specific case, and whether there is adversity is often inferred,

rather than proven directly. *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 508, 509 (Mo. banc 1993). Appellants specific claim is that an uninterrupted adverse use for ten years was not proven. We turn to an examination of the evidence presented.[1]

The pathway at issue is a strip of land located on the Appellants' properties leading down to property owned by the Corps of Engineers and Lake Pomme de Terre. The subdivision in which Appellants reside is adjacent to the Corps of Engineers' land. Charles Keith, one of the original subdivision developers, testified that it was the developers' intention to leave the north five feet of Appellant Quirks' land as a pathway for people living on the hill in the subdivision to have access to the lake. When the land was sold to the Quirks and the Guinns, however, the developers did not retain an easement. The developers did not realize the reservation had not been made until approximately a year before the trial.

Keith testified that the lot owners generally understood that they could use the pathway in perpetuity. Additionally, several lot owners testified to their knowledge of the use of the pathway by the subdivision residents. Leslie Connor, lot owner and plaintiff, testified that it was common knowledge that the pathway was the access to the lake for the lot owners.

Michael Moore, an owner of property in the subdivision, testified to his knowledge of the use of the pathway. He had been coming to the subdivision since the late 1960s and testified that the pathway had been there since then. From the late sixties until 1977 he went to the area six times every summer. During that time he observed a sign at the beginning of the pathway where an arbor was located that identified the pathway as the path to Lake Pomme de Terre. He saw many people use the pathway from the sixties until 1977.

Moore then leased a home from 1977 to approximately 1984. When he visited the area, between six to eight weekends a year, plus a week for a vacation, he viewed people on the pathway all the time. He has even used a golf cart to travel the pathway. Moore has cut the grass on the pathway two to three times and the grass was always worn off the pathway by the end of the summer from use. He could not remember a time when the pathway was ever totally overgrown. The usage of the pathway stopped when the Quirks erected a chain-link fence in 1997. At no other time was there ever an obstruction on the pathway.

Ward Bond has been coming to the area since 1972 when he was a teenager. He purchased his own property in 1979. He testified that from 1972 through 1974 he was in the subdivision every weekend through the summer and used the path daily. He confirmed that there was a sign on the arbor indicating the pathway was the way to the lake. Bond named other people that used the pathway daily and also testified that neighbors including Moore, would often mow the pathway.

---

1. Appellants' statement of facts is two paragraphs and one sentence long. It is merely a recitation of the procedural history of the case. Rule 84.04(c) requires the statement of facts to be "a fair and concise statement of the facts relevant to the questions presented for determination without argument." The facts should define the scope of the controversy and "afford an immediate, accurate, complete and unbiased understanding of the facts of the case." *Yarnall v. Choudhury*, 23 S.W.3d 920, 921 (Mo.App. S.D.2000). Appellants' recital of the facts is deficient and violates Rule 84.04(c). *Id.* We do not dismiss Appellants' appeal on this basis, however, because the argument section of Appellants' brief provides this court with an understanding of the issues raised. *See id.*

Since 1979 Bond came down to the area every other weekend, including once a month in the winter, and he used the pathway every time he was there. He would ride his riding lawnmower down the path in the winter. Bond testified that the arbor was taken down by the Quirks because they were afraid someone would get hurt on it.

Bond believed the pathway was for everyone in the subdivision. In 1987 the Quirks told Bond's son that he was trespassing when they found him using the pathway. Bond told the Quirks that the pathway was for everyone to use. The Quirks also would tell Bond's guests that they were trespassing when they used the pathway and Bond worried that Robert Quirk would yell at them. Although Robert Quirk told Bond that the pathway could be used as it always had, Bond did not think that the Quirks had the right to withhold permission to use the pathway.

Robert Quirk testified that he knew people used the path because he saw them using it.[2] He turned people away from the pathway that were on motorized vehicles. Quirk testified that he did not turn away or deny others access to the pathway, but advised that it was private property. Quirk put up a no trespassing sign in 1996 after he counted 67 different people using the pathway, but it was removed by someone and placed on his doorstep. In 1997 he did not count how many people used the pathway because there were so many.

■ Appellants first complain that the evidence does not support the requisite continuous use for ten years. They complain that only one lot had been owned for over ten years by any of the plaintiffs, and these plaintiffs did not testify at trial. They also argue that use by the general public is too broad to establish a prescriptive easement for these particular homeowners.

■ To establish the ten-year period of use the claimant must show continuous use for that period. It need not be the ten years immediately preceding the filing of the lawsuit. *Flowers v. Roberts,* 979 S.W.2d 465, 470 (Mo.App. E.D.1998).[3] Once the ten-year period has run, the possessor is vested with title. *Id.* In some situations claimants may tack their adverse possession on to the time of the grantor's possession to establish the ten years. *Id.*

The testimony at trial indicated that the requisite use was for a ten-year period. The evidence supported a finding that lot owners had used the pathway since the sixties. Moore established that lot owners had used the pathway since the sixties until the fence was erected in 1997; Bond testified that the pathway had been used by lot owners since 1972; and Quirk testified to the use since his purchase of the property in 1975. The use by prior owners continued in the same fashion with subsequent owners, including the current owners who were named plaintiffs until 1997. The ten-year requirement was sufficiently met.

■ Appellants also argue that the use was a permissive use and not adverse.

---

**2.** Appellants Darrell and Laura Guinn were not made defendants until the middle of trial when it was discovered that a small part of the pathway lay on their property. The Guinns did not testify at trial.

**3.** *Flowers v. Roberts* is a case discussing the elements of adverse possession. Acquiring an easement by prescription is "akin to the acquisition of title to real estate by adverse possession." *Jacobs v. Roschevitz,* 20 S.W.3d 598, 600 (Mo.App. S.D.2000). Thus, at times we may turn to case law on adverse possession to explore the meaning of the elements of easement by prescription.

Appellants are correct in that there are parts of the testimony in which the witnesses speak about the Quirks granting permission to use the pathway. Contrary evidence was presented as well, and the applicable standard of review requires us to view the evidence in the light most favorable to the judgment and to ignore contrary evidence. Quirk's testimony, read as a whole, was that he believed he owned the pathway and could control the use of it. Although some of the lot owners who testified would defer to some of the Quirks' requests as to use of the property, it was apparent that the general belief was that the lot owners had intended to continue to use the pathway as they had been doing for many years despite the Quirks' attempts to control that use. The pathway was used contrary to the Quirks' requests. Thus, the plaintiffs proved that they did not recognize the Quirks' authority over the land. The use was not permissive, but was adverse. Appellants' point on appeal is denied.[4]

Sufficient evidence to support the judgment exists, the judgment is affirmed.

PARRISH, J., and SHRUM, J., concur.

---

4. Appellants raise two other points in the argument portion of their brief alleging that 1) the evidence concerning the location of the easement was too vague to enable the easement to be located and 2) that the easement is too broad. These arguments are not made a part of Appellants' Point Relied On. Arguments must be confined to the errors raised in the Point Relied On. Rule 84.04(e); *Holloway v. Cameron Community Hospital, Inc.*, 18 S.W.3d 417, 422 (Mo.App. W.D.2000). This court does not review arguments not included in the Point Relied On, as the arguments are not properly preserved for appellate review. *McNear v. Rhoades*, 992 S.W.2d 877, 881 (Mo. App. S.D.1999).