CONSOLIDATED DRAINAGE DIS-
TRICT NO. 2 OF SCOTT COUN-
TY, Missouri, Respondent,

v.

Thomas D. MOCK, Sr., a/k/a Thomas
Dale Mock, Appellant.

No. SD 29924.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 11, 2010.

Motion for Rehearing or Transfer to
Supreme Court Denied March 5, 2010.

Application for Transfer Denied
April 20, 2010.

Kenneth L. Dement, Jr., Sikeston, MO, for Appellant.

James M. Hux, Sikeston, MO, for Respondent.

DANIEL E. SCOTT, Chief Judge.

A drainage ditch separated Thomas Mock's farm from property owned by the Arnolds. The trial court granted Respondent District a forty-foot easement along Mock's side of the ditch [1] "predicated on the theory of common law dedication, easement by prescription or estoppel." Because the record does not support this conclusion, we reverse the judgment in part.[2]

## Background

The 14–mile Blue Ditch (a/k/a Glade Ditch) is part of a system built long ago to drain cypress swamps, and now is within the District's jurisdiction.[3] About a mile of the ditch splits the Mock and Arnold properties. Mock's land lies west of the ditch. Ditch access from Mock's property is limited by his fence paralleling the ditch.

Mock has lived at his property for over 60 years. His parents sold him the south part of the farm in 1978 and the north part in 1992. The 1978 deed recites that it is "subject to rights-of-way of roads and drains." The 1992 deed states it is "subject to easements for roads and drains."

The District got federal funds to clean the ditch, spread the spoil along its banks, and seed it. Neighboring landowners

---

1. The ditch is not at issue; the declared easement runs from its bank into Mock's land.

2. The judgment also declared a corresponding easement on the Arnolds' side, but in an apparent scrivener's error granted it to the "Defendants," who were Mock and the Arnolds. The Arnolds have not appealed and that easement is not challenged.

3. The District's predecessor in interest was a county drainage district organized in the early 1900's. Most, if not all, of its documents were lost in a fire.

were advised that their fences, unless removed and replaced at their own expense, would be torn down and buried by the contractor. When Mock and the Arnolds protested, the rest of the ditch was cleared, but not between them.

The District sued Mock and the Arnolds, seeking easements along each bank by common law dedication and/or prescription. The trial court ruled generally for the District[4] after a bench trial.[5]

█ Mock complains that the District proved neither common law dedication nor a prescriptive easement as to his land. We must affirm the judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Pomona Mobile Home Park, LLC v. Jett*, 265 S.W.3d 396, 398 (Mo.App.2008).

### Common Law Dedication

█ Common law dedication requires proof that: (1) the owner, by unequivocal action, intended to dedicate the land to public use; (2) the dedicated land was accepted by the public; and (3) the dedicated land is used by the public. The owner's intent to set apart land for public use is the foundation of every dedication, and is demonstrated by unequivocal acts

that expressly or plainly indicate such a purpose. *See Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 507–08 (Mo. banc 1993).[6] The District did not prove these things.

█ We find no evidence that Mock or his predecessors intended to dedicate land beside the ditch for public use or access. To the contrary, Mock fenced the bank and impeded ditch access. The District argues that Mock's predecessors must have allowed use of their land when the ditch was built. Even if so, this would not prove their intent to permanently dedicate land along the ditch to public use.[7]

Further, there was no evidence that the District, its predecessor, employees, or agents used Mock's land to access the ditch. Several witnesses testified that the ditch was worked or accessed from the Arnolds' side, but no one said so about Mock's side. Of the District's six witnesses, three had worked this part of the ditch, all from the Arnolds' side.[8] The other three did not work this section or know anyone who had done so from Mock's side. The defense witnesses, not surprisingly, did not testify about work from Mock's side either.

Since the witnesses either denied knowing which side of the ditch was used, or

---

4. *But see* our observation in note 1, *supra*.

5. In light of our disposition, we need not address Mock's asserted right to a jury trial.

6. When there is no actual intention, it is possible that an owner's actions may nevertheless evince an intention to dedicate. Since "dedication is a theory premised on estoppel rather than on an affirmative grant," such circumstances may preclude the owner from resuming rights over the property if the public acts upon the owner's manifestations. *Whittom*, 851 S.W.2d at 508. Because the District pled estoppel as a basis for its common law dedication claim but not as a separate count, we view *Whittom*'s said statement as the trial

court's basis for predicating its ruling "on the theory of common law dedication, easement by prescription or estoppel."

7. For that matter, the District's premise is speculative. Perhaps Mock's predecessor was paid for access rights. If this sounds unlikely, the point is that there was no evidence about construction of the ditch or otherwise supporting the District's argument.

8. *E.g.*, Terry Herndon indicated that he cleaned the ditch from the Arnolds' side because "there was a fence on Mr. Mock's side, on the—on the west side of the ditch. There was no fence on the east side."

testified only about use on the Arnolds' side, no evidence supports an easement on Mock's property by common law dedication.[9]

### Prescriptive Easement

A prescriptive easement is established by continuous, uninterrupted, visible, and adverse use for at least ten years, when proven by clear and convincing evidence. *Kirkpatrick v. Webb*, 58 S.W.3d 903, 906 (Mo.App.2001). Since no clear and convincing evidence showed that the District or its predecessor used Mock's land, this theory also fails.

### Other Theories

We unsuccessfully considered other theories to uphold the easement, since we are more concerned with a correct result than the path used to reach it. *Pomona Mobile Home Park*, 265 S.W.3d at 398.

An easement by necessity may arise if " 'land has been sold which is inaccessible except by passing over the land of the grantor.' " *Howell v. Rickard*, 295 S.W.3d 602, 607 (Mo.App.2009)(quoting *Vossen v. Dautel*, 116 Mo. 379, 22 S.W. 734, 735 (1893)). This seems to involve a prior unity of title (*Id.*) not shown here. Moreover, the foundation of such an easement " 'must be *necessity* and not *convenience.*' " *Baetje v. Eisenbeis*, 296 S.W.3d 463, 468 (Mo.App.2009)(quoting *Henderson v. La Capra*, 307 S.W.2d 59, 64 (Mo.App. 1957)). Given the record of usage on and from the Arnolds' side of the ditch, necessity cannot justify the Mock easement.

The District does not argue, nor could we find, that an express easement

exists. Mock's deeds were subject to road and ditch "rights-of-way" and "easements," but no such instruments were offered at trial and the testimony indicated that none had been recorded.

### Conclusion

The District did not prove its right to an easement on Mock's side of the ditch. We reverse the judgment to the extent it grants relief (including injunctive relief[10]) against Mock and his property. Otherwise, the judgment is affirmed.

LYNCH, P.J., and RAHMEYER, J., concur.

---

9. The trial court looked at photos, thought some of Mock's trees seemed small, and concluded that trees were cleared on Mock's land sometime in the past. Even if so, *arguendo*, there was no proof that the District or its predecessors were responsible, and thus still no evidence that they used Mock's land.

10. The judgment also permanently enjoined Mock from interfering with the easement.