DON E. BURRELL, P.J.
Larry Ward ("Employee") appeals a judgment in favor of Dennis Oil Company ("Employer") on his claim for unpaid commissions.[1] Finding no merit in any of Employee's claims of reversible error, we affirm.
The Evidence
Our standard of review requires us to view the evidence in the light most favorable to the judgment and ignore all contrary evidence and inferences. Moore v. Quirk , 81 S.W.3d 717, 719 (Mo. App. S.D. 2002). Our following summary of the evidence relevant to Employee's points on appeal is in accord with that standard.
*40 Employee began working as a salesman for Employer in January 2010 on a 90-day trial basis. The terms of Employee's pay during his trial period were as follows: (1) $550.00 per week in salary; (2) 8% commissions on profit from new sales; (3) 5% commissions on profits from existing sales; and (3) a company truck and phone. We will refer to Employee's trial-period wages as "base salary plus commissions."[2] Employee does not dispute the amount or calculation of his compensation during the trial period.
During the trial period, Employee signed a Non-Compete Agreement that indicated he "shall in all respects be an EMPLOYEE AT WILL. " Employee also signed a "PERSONNEL HANDBOOK RECEIPT" acknowledging that he understood he was an "employee at will[.]"
Effective June 1, 2010, after the trial period had expired, Employer unilaterally modified the terms of Employee's compensation such that Employee would no longer receive a base salary plus commissions. Instead, Employee would receive a "draw against commissions" that had the following terms: (1) a guaranteed draw of $2,333.33 per month against Employee's commissions to be earned; (2) commissions of 5% on profits earned by Employer on existing customer accounts; and (3) commissions of 8% on profits earned by Employer on newly-acquired customer accounts. At the same time the new compensation structure took effect, Employee received additional sales territory and accounts from Employer, and he was added to Employer's 401(k) program.
Employer's manager explained a "draw against commissions" as follows.
Well, you -- we paid a salary or a draw to him on a weekly basis. At the end of the month, we calculated profits, and then we took at that time as a percentage that pertained to that account, and then we came up with a number. And if you made more commission, then you got a commission check. If you made less than what you had already drawn, we didn't go back and take any money back, but we issued a note to [Employee], you know, saying there was zero dollars earned.
All of Employer's sales representatives were paid in this fashion - a draw against commissions - and no sales representatives received a base salary plus commissions. The unilateral modification of Employee's salary was memorialized in a writing prepared by Employer dated May 7, 2010.
Employee testified that he was aware of the pay change right away and that he received a paystub through the mail every week that was consistent with a proportional amount of just his monthly draw without any additional compensation. After the new pay structure went into effect, Employee did not make enough sales to earn more in commissions than the guaranteed draw. As a result, every paycheck he received added up to $2,333.33 per month. Employee worked for Employer approximately two more years under the new pay structure until he was terminated in March 2012 for "lack of sales[.]"
Employee claimed at trial that he was owed unpaid commissions in the amount of $15,008.34. He calculated that amount by adding up all of the commissions he had "earned" from May 2010 until the time of his termination, using commission figures *41 set forth in sales commission reports attached to monthly emails between Employer's owner and manager starting in June 2010 and ending in February 2012. The amounts represented Employee's eight percent monthly commissions from new customer sales, plus his five percent monthly commissions from sales to existing customers. The sales commission reports then compared that number to Employee's $2,333.33 monthly draw. In each month, the sales commission reports state "[n]o commission due."
The trial court issued its "FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT " ("the judgment") that found "[i]t is undisputed that in May of 2010, [Employer] unilaterally modified the terms and conditions of [Employee]'s employment such that beginning June 1, 2010: 1) [Employee] received a guaranteed draw against his commissions earned in the amount of $2,333.33 per month[.] ... If [Employee]'s commissions earned on profits realized did not exceed $2,333.33, [Employee] did not receive payment in excess of the $2,333.33 per month draw." The judgment also found that Employee was an at-will employee such that "the terms and conditions of his employment [were] subject to change by [Employer] at any time, absent promises by [Employer] not to change them." The judgment concluded that Employee's at-will employment status meant that his claim for unpaid commissions had to fail. This appeal timely followed the entry of the judgment.
Analysis
The case was tried to the court without a jury. We will reverse the judgment only if no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). For ease of analysis, we begin with Employee's fourth point.
Point 4
Point 4 claims that the judgment is against the weight of the evidence because Employee did not agree to a change in his compensation "from a base pay plus commissions to a 'guaranteed draw against commissions,' " and "guaranteed draw" was never defined or explained to Employee.
Appellate courts should be cautious in exercising their power to set aside a judgment on the ground that it is against the weight of the evidence. Ivie v. Smith , 439 S.W.3d 189, 205 (Mo. banc 2014). "Weight of the evidence" refers to the persuasive value of evidence, not the quantity of the evidence, and such a claim "presupposes that there is sufficient evidence to support the judgment." Id. at 206. A judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the record at trial, the existence of a fact necessary to sustain the judgment. Id.
Houston v. Crider , 317 S.W.3d 178, 187 (Mo. App. S.D. 2010), sets forth the four steps necessary to support an against-the-weight-of-the-evidence challenge:
(1) [I]dentify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
(2) [I]dentify all of the favorable evidence in the record supporting the existence of that proposition;
(3) [I]dentify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and *42 (4) [D]emonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.
Id.
Here, Employee challenges the factual proposition that his compensation was a guaranteed draw against commissions, as opposed to a base salary plus commissions. His claim that this factual proposition is against the weight of the evidence must fail as Employee fails to comply with the mandatory third step of the Houston analysis to resolve all conflicts in testimony in accordance with the trial court's credibility determinations. In fact, all of Employee's contrary evidence relies fatally on testimony the trial court did not find credible.
Employee puts most of his reliance on the sales commission reports attached to the emails between Employer's owner and manager as evidence that his compensation remained base pay plus commission. Omitted from Employee's argument is that each such report concluded with the statement, "No commission earned" or "No commission due." The referenced emails also set out Employee's $2,333.33 monthly draw, and in each month, Employee's total commissions earned fell well short of that monthly draw. A reasonable inference from these documents is that "[n]o commission earned" (or "[n]o commission due") was a shorthand way of indicating that Employee was being paid on a draw against commission and did not earn commissions that exceeded the amount of his guaranteed monthly draw. We are not permitted on appeal to draw an inference contrary to a reasonable inference drawn by the trial court. Geier v. Sierra Bay Dev., LLC , 528 S.W.3d 51, 54 (Mo. App. S.D. 2017).
Whether Employee was told about the new terms of his compensation was a contested factual issue for the fact-finder to resolve. For example, Employee introduced Exhibit 5 at trial, which was a writing that memorialized his new compensation structure as follows:
Pay plan for [Employee]
Guarantee Draw, $28,000, annual.
Commission 5% on current accounts and 8% on new accounts.
Any account transferred the commission will be 5%.
All accounts are [Employer]'s accounts and can be transferred at anytime.
[Employer] can change commission schedule at anytime.
Employee denied receiving Exhibit 5, but Employer testified that he gave a copy of it to Employee.
Employee testified that he believed he continued to earn his initial trial period wages (base salary plus commission), and Employer never told him otherwise. But Employee admitted that he never received any payment that exceeded his base salary after April 2010, and he continued to receive and cash his monthly $2,333.33 pay. The trial court was not required to believe Employee's testimony that he did not understand that the initial terms of his pay were to be for a trial period only. See Exchange Bank of Missouri v. Gerlt , 367 S.W.3d 132, 136 (Mo. App. W.D. 2012).
To sum up, Employee's pay structure was a contested question of fact, and the trial court was free to accept or reject any or all of Employee's evidence regarding his pay. White v. Director of Revenue , 321 S.W.3d 298, 308 (Mo. banc 2010). Because Employee's against-the-weight-of-the-evidence challenge relies on testimony that the trial court did not believe, it must *43 fail. See Moore , 81 S.W.3d at 719 ; Stevens v. Cato , 549 S.W.3d 479, 484 (Mo. App. S.D. 2017) (appellants' against-the-weight-of-the-evidence challenge fails because it "neglected to 'resolv[e] all conflicts in testimony in accordance with the trial court's credibility determinations' ") (quoting Houston , 317 S.W.3d at 187 ).
Point 4 is denied.
Point 1
Point 1 claims the trial court erroneously applied the law regarding compensation owed to terminated employees. That argument is based on the faulty premise that Employee's compensation was a base salary plus commissions. As explained in our analysis of Point 4, the trial court could reasonably conclude from the evidence adduced at trial that, as of June 1, 2010, Employee's pay was based instead on a draw against commissions. Under that compensation scheme, Employee was not owed any "unpaid commissions" at the time of his termination because he never generated enough sales to earn more than his guaranteed monthly draw.
Point 1 is denied.
Points 2 and 3
In points two and three, Employee claims the trial court erroneously applied the law regarding the interpretation of ambiguous contracts and the ratification or waiver of an employer's breach of contract. Because these points rely on the faulty premise that Employee had an employment contract that was breached by Employer, we address them together.
Prior to the presentation of evidence, citing Rule 73.01(c), Employee filed a written "REQUEST FOR GROUNDS FOR DECISION AND FINDING " that sought, in toto , "a brief opinion containing a statement of the grounds for the court's decision and the method of deciding any damages awarded. [Employee] requests a specific finding as to the terms of the agreement regarding [Employee]'s compensation rate."
The judgment found as follows that Employer and Employee did not have an employment contract: "It is also clear to this Court, and the Court concludes, [Employee] was an 'At-Will' employee of [Employer]. In Missouri, employees who do not have a contract for a [definite] period of time are considered 'employees-at-will.' "
Because the trial court found Employee to be an at-will employee (a non-contractual relationship), any legal analysis involving the interpretation of an ambiguous contract or the potential ratification or waiver of any breach of such a contract was irrelevant to the resolution of Employee's claim for unpaid compensation. None of the documents cited by Employee promised that he would be employed for any specific period of time, and, to the contrary, they all emphasized that he was an at-will employee whose compensation could be changed at any time.
"Terms and conditions of at-will employment are not enforceable at law as contractual duties .... In at-will employment, either party can announce at any time that there are new conditions on either working or providing work. The other can say yes or no." Morrow v. Hallmark Cards, Inc. , 273 S.W.3d 15, 26 (Mo. App. W.D. 2008).
As a result, the trial court did not misstate or misapply the law in finding that Employer, not having promised otherwise, could change the terms of Employee's *44 compensation with reasonable notice. Employee's options were to either accept the new terms of employment or leave.[3] See id. ("Each one may terminate the employment, but neither one has an action at law"). See also Albers v. Cardinal Glennon Children's Hosp. , 729 S.W.2d 519, 523 (Mo. App. E.D. 1987) (dismissing for failure to state a claim a petition against the employer for discontinuation of a wage and scheduling program upon reasonable notice because the employees failed to allege a valid and enforceable contract).
The cases cited by Employee are inapposite as they all address situations in which an employment contract governed the employer-employee relationship. See Supermarket Merch. & Supply, Inc. v. Marschuetz , 196 S.W.3d 581, 583 (Mo. App. E.D. 2006) (agreement between employer and employee provided for employee's compensation, inter alia , and specifically provided that it could not be modified without employee's and employer's signature); Smith-Scharff Paper Co. v. Blum , 813 S.W.2d 27, 28 (Mo. App. E.D. 1991) (employment agreement provided terms for employee's compensation, termination of employment, and modification of contract and covenants not to compete); Forms Mfg., Inc. v. Edwards , 705 S.W.2d 67, 69 (Mo. App. E.D. 1985) (employer breached the employment agreement before employee breached a covenant not to compete, and company was therefore barred from enforcing the covenant).
Points 2 and 3 are also denied, and the judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, J. - CONCURS
GARY W. LYNCH, J. - CONCURS

Employee also sued Employer for his accrued but unpaid vacation time. That issue is not before us in this appeal.

The term "new customer sales" meant sales to any new customers that Employee brought to the business. "Existing customer sales" were sales to any customers that were already doing business with Employer and were turned over to Employee to maintain and service.

Employee argues that he could not leave because he had "just signed a two-year non-competition agreement which would have been triggered if he quit." None of Employee's points challenge the enforceability or effect of the Non-Compete Agreement, so we do not address it. See Darr v. Roberts Marketing Grp., LLC , 428 S.W.3d 717, 726 n.6 (Mo. App. E.D. 2014) (refusing to find that several of the provisions of the non-compete agreement would likely be held unreasonable and invalid under Missouri law because those issues were not before the court).