Brent ANDERSON and Gina Anderson, his wife, Thomas M. Matthews and Mary K. Matthews, his wife, and Dickie Anderson, Respondents,

v.

Robert R. MANTEL and Dorothy M. Mantel, his wife, Appellants.

No. 23772.

Missouri Court of Appeals, Southern District, Division Two.

July 6, 2001.

Harvey S. Allen, Thayer, for Appellant.

David G. Neal, Eminence, for Respondent.

BARNEY, Judge.

Respondents, Brent Anderson and his wife Gina Anderson, Thomas M. Matthews and his wife Mary K. Matthews, and Dickie Anderson, ("Plaintiffs") are owners of a tract of land consisting of approximately 320 acres located in Howell County, Missouri. Plaintiffs' land immediately adjoins a 160 acre tract of land to the southeast owned by Appellants, Robert R. Mantel and Dorothy Mantel, his wife, ("Defendants"). Defendants also own a 100 acre tract of land which abuts their 160 acre tract to the east, together with an additional 108 acre tract of land which lays directly south of their 160 acre tract.

Plaintiffs sought to establish a private road by strict necessity, pursuant to section 228.342, and construct the road about one-half mile long and 40 feet wide, commencing from the southeast corner of their purportedly landlocked tract of land, thence south through Defendants' land connecting with County Road 2410.[1] In the trial court below, Defendants argued that the placement of a road as requested by Plaintiffs would have the effect of dividing their property into combined tracts of approximately 270 acres on the west side, and 100 acres on the east side. Defendants also argued that Plaintiffs' proposed route would divide the joint cattle operation of Defendants and their son, Robert Mantel, Jr., into two tracts of approximately 500 acres on the east side, and 400 acres on the west side. Defendants proposed an alternate route about two miles long, which would have run along the western line of a portion of their son's and his wife's property and along the western line of their own 160 acre tract of land so as to connect with Plaintiffs' property to the north.

In its "Findings of Facts and Order for Further Hearing," the trial court found that Plaintiffs were entitled to a private road by strict necessity and determined, without elaboration, that the location proposed by Plaintiffs was the only route "reasonably practical." In its "Judgment Establishing Private Road", the trial court authorized a private roadway approximately one half mile long and 15 feet wide with padlocked gates at each end. The court ordered Plaintiffs to construct and maintain the road. Defendants were authorized to use the road and were also granted the right to place cattle guards on the road at their expense and upkeep. Defendants appealed.

Defendants now raise five points of trial court error premised on: (a) insufficiency of the evidence supporting the trial court's finding of strict necessity for the roadway; (b) failure to consider alternative routes

---

1.  Statutory references are to RSMo 2000 un-  less otherwise set out.

proposed by Defendants so as to do as little damage or injury and cause as little inconvenience as practicable to Defendants; (c) failure to set out a proper legal description of the roadway granted; (d) ignoring statutory requirements that the private road be situated so as to do as little damage or injury and cause as little inconvenience as practicable; and (e) unlawfully delegating to commissioners the responsibility of determining the necessity and placement of gates, fencing and cattleguards on the private road, when commissioners were only statutorily authorized to determine issues relating to damages. The first two points are dispositive.[2] We reverse and remand for further proceedings.

■ "In an action for a private road pursuant to [s]ection 228.342 RSMo, a plaintiff must show that he or she owns the land, that no public road goes through or alongside the tract of land, and that the private road petitioned for is a way of 'strict necessity.'" *Hamai v. Witthaus,* 965 S.W.2d 379, 382 (Mo.App.1998). " 'Strict necessity' has been interpreted to mean the absence of a 'reasonably practical way' to and from plaintiff's land that the plaintiff has a legally enforceable right to use." *Id.; Moss Springs Cemetery Ass'n v. Johannes,* 970 S.W.2d 372, 376 (Mo.App.1998). "Convenience does not satisfy the requirement of 'strict necessity.'" *Moss Springs Cemetery Ass'n,* 970 S.W.2d at 376. "Rather 'strict necessity' means the lack of a legally enforceable right to use a practicable way to and from a person's land, either private or public." *Id.* (quoting *Wolfe v. Swopes,* 955 S.W.2d 600, 602 (Mo.App.1997)).

■ "The issue of the general location of the private road (once strict necessity has been established) is for the court to determine ." *Hamai,* 965 S.W.2d at 382. "In doing so, the respective benefits and burdens to the parties are factors to be weighed and considered by the court." *Id.* "The statutory scheme explicitly requires that the private road established must be 'situated so as to do as little damage or injury and cause as little inconvenience as practicable' to the owners of the land over which it will pass." *Id.;* see § 228.345. "Weighed against that requirement, the location chosen for the private road must be one that is reasonable and practical." *Id.*

■ We will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Moss Springs Cemetery Ass'n.,* 970 S.W.2d at 374.

■ In their first point, Defendants contend that the trial court erred in finding that Plaintiffs were entitled to a private roadway by necessity. They argue there was no substantial evidence supporting the trial court's findings of strict necessity and that such a finding was against the weight of the evidence. We view the evidence and permissible inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Black v. Simpson,* 4 S.W.3d 175, 177 (Mo.App.1999). The "credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony." *Id.; see Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988).

■ Viewed from the foregoing perspective, we observe that Plaintiff, Dickie Anderson, testified that before he and the

---

2. Point Four is largely repetitive of Point Two.

other Plaintiffs purchased their 320 acre tract of land they discovered no roads or easements leading from any public thoroughfare to Plaintiffs' property. Defendant, Robert Mantel, Sr., testified that at one time there was a home on the property which burned in the early 1980s, but admitted the path formerly used to traverse to and from the home was no longer used and that there was a fence across it. Also, although both Defendant Mantel and his son, Robert S. Mantel, Jr., testified as to roads formerly used by loggers and hunters leading in and out of Plaintiffs' property, neither Defendant Mantel nor his son knew of any deeded easement or government records that would permit Plaintiffs to utilize any public access to reach their land. Indeed, they did not know the names of those persons who had used any of the passage ways in and out of Plaintiffs' property, nor were they able to describe under what right any person might have used those routes.

■■■■■ "If the party seeking a private road has no legally enforceable right to use an alternative route, he is entitled to a way of necessity." *Moss Springs Cemetery Ass'n.*, 970 S.W.2d at 376 (quoting *Crouse v. Burkemper,* 593 S.W.2d 234, 235 (Mo.App.1979)). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *In Re R.T.T.,* 26 S.W.3d 830, 834 (Mo.App. 2000). After reviewing the record, we determine that there was sufficient evidence to support the trial court's findings that Plaintiffs were entitled to a "way of necessity" leading from their landlocked tract of land through some portion of Defendants' land to a public thoroughfare, and that the trial court's findings were not contrary to the weight of the evidence. Point One is denied.

■■■■ In Point Two, Defendants assert error by the trial court for refusing to receive into evidence two proposed, alternate routes for Plaintiffs' use, tendered by Defendants during trial proceedings, and for refusing to "consider" a third proposed alternate route. Defendants maintain that the trial court's action resulted in locating a private road in favor of Plaintiffs which violated the statutory provisions that such a roadway be situated so as to do as little damage or injury and cause as little inconvenience as practicable to Defendants. We agree that the trial court erred when it failed to receive into evidence the two proposed alternate routes tendered by Defendants.

In our review of the record, we note that there were two primary hearings held by the trial court. The first was on May 28, 1999. This was followed by the trial court's entry of "Findings of Fact and Order for Further Hearing" wherein the trial court determined that Plaintiffs were entitled to a roadway by necessity and generally described the route it was to run, which was consistent with the proposed route set out by Plaintiffs. In its Order, the trial court also expressly rejected the route that Defendants had proposed in the first hearing, finding, without elaboration, that Defendants' proposed route was "not reasonably practical." However, the trial court noted that there were still unresolved issues to be considered and ordered another hearing for this purpose.

During the ensuing hearing, held on August 23, 1999, Defendants attempted to offer additional, alternative routes to that proposed by Plaintiffs in the first hearing. Plaintiffs objected, stating that the matter of the location of the new road had been resolved in their favor after the first hearing. The trial court agreed with Plaintiffs but allowed Defendants to submit offers of proof as to two additional, alternative routes. The trial court also permitted Defendants to tender a third alternate route

and received exhibits in support of this third alternative route, however, it did not alter its original determination relative to the placement of the route along lines in consonance with Plaintiffs' request.[3]

■ "Generally, the decision to allow a party to reopen is within the sound discretion of the trial court." *In Re Estate of Mapes*, 738 S.W.2d 853, 855 (Mo. banc 1987). " '[W]hen there is no inconvenience to the Court or unfair advantage to one of the parties, there is an abuse of discretion and a new trial will be directed upon a refusal to reopen a case and permit the introduction of material evidence, that is evidence that would substantially affect the merits of the action and perhaps alter the Court's decision.' " *Id.* (quoting *Pride v. Lamberg*, 366 S.W.2d 441, 445 (Mo. 1963)).

The question in the instant matter is close. However, upon examining the guiding principles of the law relating to the creation of private roads on the basis of strict necessity, combined with our review of the record, we believe the trial court abused its discretion in not receiving into evidence the exhibits and testimony of Defendants' two proposed alternate routes.

■ First, it should be recalled that "proceedings to acquire a private way over the lands of another are against the common law and the common rights, and must, therefore, be strictly construed." *Wolfe*, 955 S.W.2d at 602. Secondly, in these type of cases, "mere convenience for the plaintiff does not satisfy the requirement of strict necessity." *Wagemann v. Elder*, 28 S.W.3d 351, 355 (Mo.App.2000); *Wolfe*, 955 S.W.2d at 602.

Here, the trial court's findings appeared to emphasize the convenience of the roadway granted to Plaintiffs while not explicating the reasons for the rejection of Defendants' proposed route(s). While there is little doubt that the one-half mile roadway granted Plaintiffs was convenient to Plaintiffs, it is our view that it would significantly hamper Defendants' cattle operation.[4]

---

3. All three proposed routes would have provided Plaintiffs' with a roadway that would not have interfered with the cattle operation of Robert Mantel and his son. In this connection, *see* footnote 3, *infra*. The first proposed alternate route provided for a roadway leading from Plaintiffs property and then north along the north perimeter of Defendants' property connecting with Missouri State Highway NN, a paved road. The second route, a replication of Defendants' proposed alternate route made during the course of the first hearing, provided for a roadway leading from a county road along the western perimeter of property owned by Robert Mantel Jr. and his wife, connecting to Plaintiffs' land. Unlike the first hearing, however, Robert Mantel, Jr., testified that he had conveyed a 40 foot strip of land to Defendants along the entire length of the western perimeter of his and his wife's land. The third proposal provided for a route which connected to a county road and continued along the eastern perimeter of Defendants' 100 acre tract of land, connecting at the southeast corner of Plaintiffs' 320 acre tract.

4. Defendant Robert Mantel, Sr., and his son Robert Mantel, Jr., testified that they were engaged in a joint cattle operation involving "management intensive grazing." Defendants' witness, Randall Sainer, with the University of Missouri's University Extension Service, testified that "[m]anagement intensive grazing is a process where we get more total production from the land by managing it intensively and grazing it faster." He related, "we move [the cattle] from small paddock to small paddock. It's almost like a lawn mower. We try to get it real evenly grazed, and the idea is you get more total production." Under this system, the cattle are repeatedly moved and it requires a lot of gates to move them through, because "[a]s the grass grows, you move them through the system, and then as they grow back, you move them back through...." Defendant Robert Mantel related that a roadway up the middle of his farm would adversely affect his operation because

The record also shows that Plaintiffs were acquainted with the topography of the tracts of land in question, including the various trails and roads leading to and from Plaintiffs' tract of land either through or around the various tracts owned by Defendants or their son. This acquaintanceship militated against any claim of surprise Plaintiffs may have asserted relating to Defendants' proposals of new routes. Indeed, Plaintiffs' witnesses testified in explicit terms as to why the first two routes submitted by Defendants in the second hearing were inadequate for their needs, mentioning a purported sinkhole, the requirement to make certain "square" turns along the route, and the extra length of the proposed road.

Plaintiff Thomas Matthews also testified that he had met with Defendants' son to discuss Defendants' proposal to set out a roadway along the western perimeter of Defendants' son's and his wife's land. Additionally, as to the second route proposed by Defendants along the northern perimeter of Defendants' 280 acre tract of land connecting to the east side of Plaintiffs' land, Mr. Matthews testified that he was aware of a "big holler" somewhere near this route. The trial court abused its discretion in not receiving evidence relating to Defendants' two alternative proposed routes in the second hearing. *See In re Estate of Mapes,* 738 S.W.2d at 855. Point Two is well taken.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. The trial court may take additional evidence as it sees fit.

PREWITT, J., concurs.

GARRISON, J., concurs.

---

his operation required east-west fences instead of north-south fences and there would have to be at least four gates crossing the road at eight different points along the route so the cattle could traverse from one paddock across the middle of the road to another to another paddock. He also testified that the road would have to be fenced on both sides and that occasionally the gates at any given cross-fence would have to be left open in order to allow calving cows to follow a herd at later points in time.