**David J. JOHNSTON, Jr., Respondent,**

v.

**Anzel E. SHOULTS and Donna Shoults, Appellants.**

No. 26345.

Missouri Court of Appeals, Southern District, Division Two.

April 22, 2005.

Daniel E. Leslie, Leslie, Spieler & Fulford, LLC, Union, for appellants.

Mark Weaver, Salem, for respondent.

1. Statutory references are to RSMo 2000. Rule references are to Missouri Court Rules (2005).

ROBERT S. BARNEY, Judge.

Appellants, Anzel E. Shoults and Donna Shoults ("the Shoultses") appeal from a judgment entered by the trial court in favor of Respondent, David J. Johnston, Jr. ("Johnston") establishing a 20–foot wide roadway by strict necessity, pursuant to section 228.342, across land owned by the Shoultses in Dent County, Missouri.[1] The trial court determined Johnston had no access to a public road from an 80–acre tract he owned other than by the roadway so established. In their sole point relied on, discussed below, the Shoultses maintain the trial court erred in granting a roadway in favor of Johnston on the basis of strict necessity because Johnston already owned a strip of land which afforded him roadway access to his 80–acre tract.[2]

An appellate court is to sustain a judgment in a court-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *see* Rule 84.13(d). Here, "[w]e view the evidence and permissible inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Anderson v. Mantel,* 49 S.W.3d 760, 763 (Mo.App.2001). "The 'credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony.'" *Id.* (quoting *Black v. Simpson,* 4 S.W.3d 175, 177 (Mo. App.1999)).

As stated in *Anderson,*

2. At the time of trial, Johnston had a timber harvesting operation requiring a reasonably flat roadway for egress and ingress for his trucks.

In an action for a private road pursuant to section 228.342,[3] a plaintiff must show that he or she owns the land, that no public road goes through or alongside the tract of land, and that the private road petitioned for is a way of strict necessity. Strict necessity has been interpreted to mean the absence of a reasonably practical way to and from plaintiff's land that the plaintiff has a legally enforceable right to use. Convenience does not satisfy the requirement of strict necessity. Rather strict necessity means the lack of a legally enforceable right to use a practicable way to and from a person's land, either private or public.

*Anderson,* 49 S.W.3d at 763 (internal citations omitted).

 Additionally, we note that " '[t]he issue of the general location of the private road (once strict necessity has been established) is for the court to determine.' " *Id.* (quoting *Hamai v. Witthaus,* 965 S.W.2d 379, 382 (Mo.App.1998)). " 'In doing so, the respective benefits and burdens to the parties are factors to be weighed and considered by the court.' " *Id.* (quoting *Moss Springs Cemetery Ass'n v. Johannes,* 970 S.W.2d 372, 376 (Mo.App.1998)). " 'The

statutory scheme explicitly requires that the private road established must be "situated so as to do as little damage or injury and cause as little inconvenience as practicable" to the owners of the land over which it will pass.' " *Id.* (quoting *Johannes,* 970 S.W.2d at 376).

The record shows Johnston owns the 80–acre tract mentioned above as well as a 38–acre tract which lies diagonally southeast of the 80–acre tract.[4] Johnston maintained at trial that while both of these tracts meet at a point, there was neither a public nor legally enforceable private road which he could use for ingress and egress between these two tracts.

The record reveals that the Shoultses own a 40–acre tract of land which lies directly west/southwest of Johnston's 80–acre tract, and a 37–acre tract which is located south of their 40–acre tract of land and diagonally southwest of Johnston's 80–acre tract.[5]

At trial, Johnston showed that his 38–acre tract connects with "VV" Highway, which highway eventually connects with the southeastern portion of the Shoults' 37–acre tract. Accordingly, Johnston re-

---

3. Section 228.342 sets out that:

A private road may be established or widened in favor of any owner or owners of real property for which there is no access, or insufficiently wide access, from such property to a public road if the private road sought to be established or widened is a way of strict necessity. As used in this section, the term **"strict necessity"** shall include the necessity to establish or widen a private road in order to utilize the property for the uses permitted by law. Any petition for the establishment or widening of a private road shall be filed and the proceeding shall be conducted in the circuit court of the county where the proposed road is to be located. The owners of the real property over which the proposed private road shall pass shall be named as defendants.

4. Acreage numbers listed in this opinion are approximate amounts, being "more or less" and are used for explanatory purposes only.

Johnston's eighty-acre tract of land is described as [a]ll the East Half of the Southeast Quarter of Section 19, Township 32 North, Range 7 West; while his thirty-eight-acre tract is located in the Northwest Quarter of the Northwest Quarter of Section 29, Township Thirty–Two (32) North, Range Seven (7) West.

5. The Shoults' 40–acre tract of land is described as the Southwest Quarter of the Southeast Quarter of Section 19, Township 32 North, Range 7 West. The Shoults' 37–acre tract is described as the Northwest Quarter of the Northeast Quarter of Section 30, Township 32 North, Range 7 West of the 5 P.M.

quested the trial court to grant him a roadway by necessity, 20–foot wide (hereafter known as "Tract B"), to run north and south from "VV" Highway along the eastern border of the Shoults' 37–acre tract, then continuing some 20 feet north along the eastern border of the Shoults' 40–acre tract, so as to connect to Johnston's 80–acre tract. The trial court agreed and entered judgment in consonance with Johnston's request.[6]

■ In their sole point relied on, the Shoultses maintain Johnston failed to prove he had "no reasonably practical way to access his eighty (80) acre tract because as a matter of record and by lawful conveyance [Johnston] owns a tract of land that connects to a public road and accesses his eighty (80) acre tract," and that he "failed to show that this tract could not provide a reasonably practicable way for him to access his eight (80) acre tract." In support of this argument, the Shoultses point to four warranty deeds, commencing with the first one dated January 17, 1974, and ending with the last conveyance to Johnston on September 25, 1997, which facially conveyed to Johnston's predecessors in title and ultimately to Johnston, not only his 80–acre tract of land, but also the following described roadway (hereafter known as "Tract A"), that connects with Highway "VV" and would allow Johnston to access his 80–acre tract to the north, to-wit:

A 20 foot strip along the West side of the Section line separating Sections Twenty–Nine (29) and Thirty (30) from State highway "VV" to the Southeast corner of the Southeast Quarter of Section 19, Township 32 North, Range 7 West.[7]

Accordingly, the Shoultses maintain that Johnston failed to present sufficient evidence showing the absence of a "reasonably practical way ... to access" his 80–acre tract and that he failed to make his case for a roadway by strict necessity across the Shoults' land, thereby requiring a reversal of the trial court's judgment.

At trial, Johnston presented evidence showing that he in fact has no legal interest in the tract of land described in the foregoing deeds, i.e., Tract A, despite the language in the deed from the Browns. He maintained at trial, as he does in this appeal, that the conveyance of Tract A from the Woffords to the Moodys was in error, because the Woffords did not own the land through which Tract A ran. This error was then replicated in later deed conveyances.

Johnston presented evidence showing Tract A is actually located on the eastern border of the Northeast Quarter of the Northeast Quarter of Section 30, Township 32 North, Range 7 West, on a 34–acre tract of land now owned by James Gorman, and that James Gorman and his predecessors in title have owned the tract of

6. The trial court also awarded damages to the Shoultses in the amount of $1,000.00 and ordered that Johnston be responsible for the construction, maintenance and repair of the roadway, together with various costs and fees.

7. The first general warranty deed conveying Tract A and Johnston's 80–acre tract is dated January 17, 1974, and reveals a conveyance from E.W. and Aileen Wofford ("the Woffords") to Marion Andy Moody and Montine C. Moody ("the Moodys"); the second general warranty deed in the chain of title is dated November 7, 1974, and shows a conveyance of the same land from the Moodys to James R. Clark and Frances D. Clark ("the Clarks"). While not shown as an exhibit, transcript testimony reveals the Clarks conveyed the same properties to Harold R. Brown and Delores Brown ("the Browns") and, in turn, the Browns conveyed the properties to Johnston by general warranty deed dated September 25, 1997.

land dating back to 1894.[8] A.J. Gorman testified that at the time of the conveyance of Tract A from the Woffords to the Moodys *he* owned the 34 acres now owned by James Gorman, which lies just east of the 37–acre tract owned by the Shoultses. A.J. Gorman related that he did not grant an interest to anyone to run a roadway along the eastern side of his 34–acre tract. A.J. Gorman also stated that he was familiar with the 80–acre tract now owned by Johnston because his former neighbors, the Woffords, owned that tract of land prior to the Browns purchasing the property.[9]

A.J. Gorman further testified that he was present when Mr. Wofford agreed to sell the 80–acre tract to the Moodys and agreed to allow the Moodys to access the 80–acre tract by use of a piece of land located on the "east end" of the Wofford property, i.e., the 37–acre tract now owned by the Shoultses.

■ In his testimony, Johnston acknowledged he had not obtained any written easements or deeds or received oral or verbal promises from anyone that would allow him to cross their land in order to remove his timber from his 80–acre tract, so as to "haul it all the way to Highway VV." In particular, he acknowledged he had no agreements with James Gorman or his neighbor, Herbert Voertman, to access his 80 acres through use of their land.[10] Johnston also acknowledged that "trying to get across Mr. Gorman's northeast corner or Mr. Voertman's southwest corner . . . is almost impossible." When questioned as to what made it impossible, he indicated it was the "lay of the land."

---

8. The record reveals Glenda K. Prugh ("Prugh") worked with the Dent County Abstract Company. One of her duties at the abstract company was researching land titles which she has done for the past 20 years. Prugh testified on behalf of Johnston and stated that James Gorman ("Gorman") and his predecessors in title have held title to "the Northeast Quarter of the Northeast Quarter of Section 30 in Township 32 North, Range 7 West," on which Gorman's 34–acre tract lies, since 1894, save for a small parcel in the southeast corner of that tract.

With regard to the Woffords' conveyance of Tract B to the Moodys, Prugh testified that "[the Woffords] conveyed a 20 foot strip out of the Northeast of the Northeast of Section 30 *and up to that point there had been no deed to them for that quarter-quarter.*" (Emphasis added). Prugh referred to that deed as a "stray deed" and one which "just pops up out of nowhere." She also acknowledged that during her title search she did not uncover any other documents conveying an interest in the aforementioned quarter-quarter to the Woffords, the Moodys, the Clarks or Johnston, save for the previously described "stray deed" conveyance.

9. Recall, of course, that the Browns conveyed to Johnston this same tract of land, together with Tract A, in 1997.

10. In this connection, we note Mr. Shoults testified it would take but a small portion of Mr. Voertman's or Mr. Gorman's properties for Johnston to access his 80–acre tract from his own 38–acre tract. In their brief, the Shoultses now argue that the trial court should have considered alternative routes across these adjoining landowners' properties in determining the location of the roadway by necessity. It is clear, however, that section 228.342 " 'does not direct that alternate ways of necessity across other adjoining land owner's property be considered.' " *Johannes,* 970 S.W.2d at 377 (quoting *Moran v. Flach,* 752 S.W.2d 956, 959 (Mo.App.1988)); *see also Lewis v. Hilkerbaumer,* 599 S.W.2d 7, 9 (Mo. App.1980) (holding that "it is for plaintiffs to determine against whom they will proceed in seeking a roadway"). While this Court held in *Anderson* that the trial court abused its discretion in not receiving into evidence two proposed alternative routes, it should be noted that the alternative routes proposed in *Anderson* were expressly located upon the *Anderson* Defendants' property and not that of adjoining landowners. *Anderson,* 49 S.W.3d at 765–66.

Johnston stated that he favored the use of Tract B because the roadway was "already there," and that the topography of the area while "not exactly flat ... it's for the most part ... passable and flat."

Finally, Johnston testified "there's a residence at the front section" of Tract A that blocks ingress and egress through this particular roadway. This testimony is bolstered by that of Prugh, who also testified that title records revealed a decree quieting title, dated October 20, 1976, in which the Circuit Court of Dent County determined that Loretta McMahon, was vested with the fee simple title to a "parcel of land 2 acres square out of the southeast corner of the Northeast Quarter of the Northeast Quarter of Section Thirty (30), Township Thirty-two (32) North, Range Seven (7) West." [11]

Based on the foregoing, we cannot say that Johnston had a legally enforceable right to use a practicable way to and from his 80–acre tract of land, either private or public. *Johannes,* 970 S.W.2d at 376. The Shoults' point relied on is denied. The judgment granting Johnston a roadway of strict necessity pursuant to section 228.342 is affirmed.

PARRISH, P.J., and SHRUM, J., concur.

---

11. Among the defendants named in the quiet title action where the Moodys, the Clarks, A.J. Gorman, the father of James Gorman and James Gorman's predecessor in title to the 34–acre tract of land. According to Prugh, the Browns were not named in the 1976 action because they had yet to acquire their interest in their property.