Brent ANDERSON and Gina Anderson, his wife, Thomas Matthews and Mary K. Matthews, his wife, and Dickie Anderson, Plaintiffs–Appellants–Respondents,

v.

Robert R. MANTEL, Virgil A. Hammack and Madyln R. Hammack, Doreen Grogan and Wayne Grogan, Charlotte Talbert and Roger Talbert, and Douglas R. Nickell, Trustee for Mercantile Bank of Willow Springs, Defendants,

Dorothy M. Mantel, Defendant–Respondent–Cross Appellant.

Nos. 26284, 26289.

Missouri Court of Appeals, Southern District, Division One.

Sept. 19, 2005.

David G. Neal, Eminence, MO, for Appellants–Respondents.

Harvey S. Allen, Thayer, MO, for Respondent–Cross Appellant.

NANCY STEFFEN RAHMEYER, Judge.

This is the second time this action for the declaration of a private road by strict necessity has been before this Court. *See Anderson v. Mantel,* 49 S.W.3d 760 (Mo. App. S.D.2001). The facts are more fully developed in that opinion, however, we will provide a brief synopsis for review of the issues pertinent to this case. Brent Anderson, Gina Anderson, Thomas Matthews, Mary K. Matthews, and Dickie Anderson ("Plaintiffs") brought suit against Robert R. Mantel and Dorothy M. Mantel ("Defendants") to establish a private road by strict necessity. *Id.* at 762. The land was purchased because of the good timber and the plan was for it to be logged; the owners intended to use pole trailers to haul tree-length logs. The trial court entered a judgment establishing a private roadway; however, this Court reversed due to Defendants' claim of error in refusing to receive into evidence two proposed, alternate routes for Plaintiffs' use. *Id.* at 764–66. This Court, however, denied Defendants' contention that there was insufficient evidence to support the court's finding that Plaintiffs were entitled to a "way of necessity" leading from their landlocked tract of land through some portion of Defendants' land to a public thoroughfare. *Id.* at 764.

On remand, the trial court filed a pretrial order directing the parties to file by October 1, 2001, a written disclosure of each of their suggestions for an alternative route to the route previously ordered. The disclosure was to list the following: (1) a distinct popular name for the route; (2) a written statement describing the route; (3) a detailed legal description of the route; and (4) the name and contact information of each person claiming any interest in any part of the route and a statement of the willingness of each such person to permit the right of way or easement and the conditions thereon, if any. Defendants filed a response proposing three alternative passages, referred to as the "NN Route," the "East Route," and the "West Route," each to be forty feet in width. Plaintiffs did not file an initial response to the order and presumably requested that the judge stay with its original selection.

At the trial date of July 30, 2002, Defendants offered an amended response to the pretrial order asking that the proposed routes be decreased in width to fifteen or twenty feet, but the court refused to allow the amendment. Plaintiffs also filed a pleading requesting that the original route be increased in width from fifteen to thirty feet; that request was also denied. After a trial delay in order to allow Defendants to file an application for a writ, the trial commenced on October 1, 2002. At trial, Plaintiffs conceded the West Route offered by Defendants was more appropriate than the initial route or any other route.

In a Memorandum and Findings of Fact and an Order Determining Location of Private Road dated October 21, 2002, the court agreed that the West Route, with a width of forty feet, was the most appropriate; it further stated that Defendants would not be required to assist in either the construction or maintenance of the road, nor would they be permitted to use it. Defendants filed a motion challenging the forty-foot width of the road on November 20, 2002, but did not challenge the finding that Defendants would not be permitted to use the road. After an additional survey determined that Defendants did not own much of what they had described as owning in the West Route, Plaintiffs petitioned to change the description so as

to not conflict with that part of the described road claimed by neighbors.[1]

After the trial and post trial motions, the trial judge, who was present for the trial, recused himself and was replaced by the second judge, who appointed Commissioners to assess Defendants' damages. A Report of Commissioners was filed on December 6, 2002, establishing Defendants' damages in the amount of $17,500.00. After the assessment of damages by the Commissioners, Plaintiffs filed exceptions and requested the matter of Defendants' true loss be placed before a jury for determination; Defendants did not file any exceptions to the assessment of damages by the Commissioners. Plaintiffs subsequently withdrew a request for a jury trial, accepted the Commissioners' award, and entered written Confessions of Judgment. The court accepted the Confessions, entered a final judgment awarding to Plaintiffs the West Route at the forty-foot width, but omitted the language of the interlocutory judgment that Defendants would not be given a right to use the private road. The judgment simply stated, "Defendants shall not have a duty to construct or maintain the private road described above." It is from this judgment that both sides appeal.

Plaintiffs appeal the omission of the language which proscribed the use of the road by Defendants; Defendant[2] appeals the forty-foot width, the refusal of the court to require Plaintiffs to maintain a fence along the private road, the denial of her attempt to amend her response to the pre-trial order, and claims the West Route does not

satisfy the requirements to situate the road so as to do as little damage or injury to Defendant.

This Court will sustain the judgment of the trial court unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or it erroneously declares or applies the law. *Moore v. Quirk,* 81 S.W.3d 717, 719 (Mo.App. S.D.2002). We review all evidence and all inferences in the light most favorable to the judgment, ignoring all contrary evidence and inferences. *Id.* We defer to the trial court's ability to view the witnesses and determine credibility, keeping in mind that the trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. *Vaughn v. Willard,* 37 S.W.3d 413, 415 (Mo.App. S.D. 2001).

We begin with Plaintiffs' claim that the trial court erred in refusing to incorporate in its entirety all the provisions of the first judge's interlocutory order into the final judgment, specifically, the restriction against the Defendants' use of the private road. As noted earlier, after the hearing on the appropriate route, the trial judge entered an interlocutory judgment, which designated Plaintiffs as the parties who were to construct and maintain the road and further stated:

> Consistent with such an expectation [that the Court would select the West Route], Defendants make no request to use a private road on the West Route. At a forty[-]foot width they will not own land bordering the private road. There-

---

1. The description of the roadway is not being disputed by either party in this appeal and those issues have been resolved with the neighboring owners.

2. Defendant Robert R. Mantel passed away in November 2003 and the parties stipulated that his wife and co-defendant, Dorothy M. Mantel, has become his successor in interest to any rights and claims arising under this suit. A Memorandum was filed in the trial court on January 23, 2004, which stated, "Robert Mantel is to be removed from the proceedings as a Defendant." Mrs. Mantel is the only original defendant who is a party to this appeal.

fore, Defendants will not be granted a right to use or be given a duty to construct and maintain the private road.

Plaintiffs['] concerns that the Southern portion of the West Route is encumbered by two thirty[-]foot easements presently enjoyed by non-parties to this action have been considered by the Court. Those easements were established by written grants and are not exclusive. Thus, an additional easement could be established by the fee owner at any time without objection. An order for a private road excluding Defendants from the use of the private road will establish an exclusive use, subject to all existing easements of record, including existing utility and non-exclusive road easements. If an easement holder successfully prevents the practical use of the private road a procedure for widening a private road is available. See Section 228.342, RSMo[.]

The Defendants['] motion to add the holders of the easements on the Southern portions and to file a Third Party Petition as to them are denied. It is not necessary they be parties. The Court believes an agreement as to the maintaining of the existing road surface in the area of the existing easements can be reached easily by reasonable people. If necessary, a separate action is available to resolve that issue. Such an action will not require Defendants. Thus, no orders regarding construction and maintenance will be made except those stated.

*NOW, THEREFORE,* the Defendants['] motions to add the holders of the easements on the Southern portions of the West Route and to file a Third Party Petition as to them are denied. The Court also will make an order for a forty[-]foot private road using the entire

legal description suggested by Defendants in their Pre–Trial Response and repeated in "Defendants['] Exhibit V" received into evidence at trial on October 1, 2002. The order will exclude Defendants from any right to use the private road and from any duty to construct or maintain the private road.

Plaintiffs appeal the trial court's omission in the final order of the language of the interlocutory order "prohibiting Defendant from using the private road." Specifically, Plaintiffs maintain that section 228.358 requires all the provisions of the interlocutory order to be included in the final judgment and section 228.352 specifically requires the court to include in an interlocutory judgment a determination of the nature and scope of the parties' rights to the use and the enjoyment of the private road.[3] Defendant counters section 228.358 provides that should no exceptions to the Commissioners' report exist or if Plaintiffs withdraw any exceptions, then the final judgment need not include language from the interlocutory judgment.

Both parties then admit that the construction of sections 228.352 and 228.358 is a question of law. As such, we conduct an independent review of the trial court's statutory interpretation without deference to the trial court's ruling. *State v. Laplante,* 148 S.W.3d 347, 348–49 (Mo.App. S.D.2004). Where the language of the statute is clear and unambiguous, there is no room for statutory construction and the language will be given its plain and ordinary meaning. *Reeves v. Snider,* 115 S.W.3d 375, 382 (Mo.App. S.D.2003).

The statutory scheme for obtaining a "way of strict necessity" divides the proceedings into several distinct phases. The first, provided by section 228.352, states:

---

**3.** All references to statutes are to RSMo 2000, unless otherwise specified.

After the time for filing the answer to the petition has expired and after the parties have had a reasonable time for discovery, the court shall conduct a nonjury hearing during which the parties may submit evidence pertaining to the allegations of the petition and to the proposed location of the private road. If the court determines upon a petition to establish a private road that there is access to a public road or that the way sought is not a way of strict necessity, then the petition shall be dismissed. If the court determines that there is no access to a public road and the way sought is a way of strict necessity, then it shall further determine the location of a private road that is situated so as to do as little damage or injury and cause as little inconvenience as practicable to the defendants.... The court shall then enter an interlocutory order for the establishment or widening of the private road at the location determined by the court. As part of such interlocutory order, the court shall also designate which party or parties shall be responsible for the construction, maintenance and repair of the private road and shall set out the nature and scope of the parties' rights to the use and the enjoyment of the private road. However, the court shall not order the defendants to share responsibility for the construction, maintenance or repair of the private road if, under the court order, the defendants are not granted any rights to the use and enjoyment of the private road, or if any such rights are granted and the defendants waive such rights.

The court complied with the provisions of section 228.352. The trial court held a nonjury hearing, determined that a road was necessary as a way of strict necessity, and entered an interlocutory order designating Plaintiffs to be responsible for the construction, maintenance and repair of the private road and specifically stating that Defendants would not be granted any rights to the use and enjoyment of the private road.

After the interlocutory order is entered, damages must be assessed. Section 228.355 sets out the process for the appointment of Commissioners to determine damages:

When an order establishing or widening a private road is entered according to section 228.352, the court shall appoint three disinterested citizens of the county where the private road is to be located as commissioners to view the location of the private road and the real property affected and to assess damages to the defendants.... After the commissioners view the location of the private road and the real property affected, they shall report to the court and make an assessment of the damages sustained by each defendant. Upon the filing of such report of the commissioners, the clerk of the court shall immediately notify the parties of the filing of the report.

The language of 228.355 was clearly followed. The Commissioners entered their report as follows:

Now on this day comes JERRY HALL, KEVIN McEWEN, and RON WEBB, who were heretofore duly appointed Commissioners in the above-entitled cause, and report that they forthwith accepted the appointment, that they met together, took and filed in this case their qualifying oath, that all three together viewed all the property owned by Defendants to be affected by the roadway and have located and examined the general course and distance of said roadway, that they considered and weighed the damages, if any, which the Defendants will sustain by reason of the appropriation set out in the Petition, and

took into consideration the benefits to be derived by the owners as well as the damages sustained thereby, as is required by law, and that they do herein and hereby forthwith return, under oath, to the Circuit Clerk of Howell County their report in duplicate, setting forth: (1) the amount of net damages, if any, together with, and immediately following, (2) a specific description of the property, for the taking or use of which the damages are assessed.

It should be noted that the Commissioners located and examined the general course and distance of the roadway and "took into consideration the benefits to be derived by the owners." After the Commissioners enter their report, section 228.358 designates the process for filing exceptions to the Commissioners' report and requesting a jury trial:

Within ten days after notification of the commissioners' report, either party may file exceptions to the report and assessment of damages. If no exceptions are filed, the court shall enter a judgment establishing or widening the private road and assessing the damages as set forth in the commissioners' report to be paid by the plaintiffs to the defendants. If either party files exceptions, the court shall impanel a jury and conduct a trial to determine the amount of damages to be paid by the plaintiffs to the defendants. Thereafter, the court shall enter a judgment establishing or widening the private road and assessing the damages as set forth in the jury's verdict, and the provisions of the interlocutory order as provided in section 228.352 shall be included in such judgment. The private road so established or widened shall be a permanent easement appurtenant to the plaintiffs' real property.

■ It is this provision which is the subject of dispute between the parties.

Defendant argues there are two distinct procedures for entering final judgment once the damages have been determined, one, if damages are assessed by the Commissioners or the second, if damages are assessed by a jury. If the damages have been determined by the Commissioners *and* no exceptions are filed, Defendant contends only the second sentence applies: "[T]he court shall enter a judgment establishing or widening the private road and assessing the damages as set forth in the commissioners' report to be paid by the plaintiffs to the defendants." Defendant contends the result of Plaintiffs withdrawing their exceptions is the same as if no exceptions had been filed. In other words, the court has no obligation to include all of the provisions of the interlocutory order in the final order if no exceptions are filed to the Commissioners' report and the damages are assessed by the Commissioners. If exceptions are filed to the Commissioners' report *and* damages are assessed by a jury, then, and only then, must the provisions of the interlocutory order be contained in the final order per the fourth sentence of section 228.358.

We find Defendant's argument to be untenable. To accept her argument would allow a final judgment establishing or widening a private road that had significant changes to the private road as submitted to the Commissioners for an assessment of damages. The Commissioners' assessment of damages may have no correlation to the actual damages provided for in the final judgment. For instance, in this case, the Commissioners could have assessed damages for a forty-foot road but the court could have entered a judgment for a twenty-foot road. That is not a logical or plain reading of the statute.

The statute clearly envisions the provisions of the interlocutory order to be included in either judgment. Section

228.352 supports that analysis in that it specifically provides that the Defendants shall not be ordered to share responsibility for the construction, maintenance or repair of a private road if, under the court order, they are not granted any right to the use and enjoyment of the private road, or if such rights are granted and the Defendants waive them. The plain, clear language of the statutes, when read in harmony, clearly allows the court to grant or deny the use and enjoyment of a private road. The interlocutory order in this case made such a provision for the rights for the use and enjoyment of the private road.

■ We find the language of the interlocutory order should have been included in the final order; however, contrary to the assertion of Plaintiffs, the language of the interlocutory order did not prohibit Defendants from using the private road. Instead, the language ordered, "Defendants shall not have a right to use the private road." That is a significant difference of language, particularly in the case before this Court because a review of the West Route indicates that Defendants did not own land throughout much of the private road. In fact, in the interlocutory order, the trial court addressed the issue of the southern portion of the West Route being encumbered by two thirty-foot easements presently enjoyed by non-parties:

Those easements were established by written grants and are not exclusive. Thus, an additional easement could be established by the fee owner at any time without objection. An order for a private road excluding Defendants from the use of the private road will establish an exclusive use, subject to all existing easements of record, including existing utility and non-exclusive road easements. If an easement holder successfully prevents the practical use of the private road a procedure for widening a private road is available. See Section 228.342[.]

■ An Order which goes one step further than refusing to grant Defendants a right to use the road and instead prohibiting Defendants from using the road, regardless of any other easements or rights, would be an inappropriate infringement on any other prior easements. We are obligated under rule 84.14 to finally dispose of a case on appeal, unless justice otherwise requires, and to "give such judgment as the court ought to give." *In re Marriage of Reese*, 155 S.W.3d 862, 876 (Mo.App. S.D.2005) (citing rule 84.14 as proper authority to render final judgment).[4] Although the trial court erred in failing to set forth the provisions of the interlocutory order, we will render the appropriate judgment and amend paragraph 2 of the judgment to read, "Defendants shall not have a right to use the private road and shall not have a duty to construct or maintain the private road."

■ We shall now discuss what is designated Defendant's Point V, the issue of whether the designation of the West Route is a misapplication of law for failure to comply with the requirements of sections 228.345 and 228.352.[5] Defendant contends

---

**4.** All rule references are to Missouri Court Rules (2005), unless otherwise specified.

**5.** Section 228.345 states in pertinent part:

The proposed private road as established or widened shall not exceed forty feet in width and shall be situated so as to do as little damage or injury and cause as little inconvenience as practicable to the owner or owners of the real property over which the private road shall pass.

Section 228.352 states in pertinent part:

If the court determines that there is no access to a public road and the way sought is a way of strict necessity, then it shall further determine the location of a private

that, although the West Route was proposed by her, that in fact she *preferred* the NN Route. Defendant bases her contentions on the following testimony of Robert Mantel, Sr.:

> Question: Now, if the Court were to grant an easement to the Plaintiffs across this NN route, would that reduce the inconvenience to you?
>
> Answer: It sure would.
>
> Question: Would the NN route be the least inconvenient route for your purposes?
>
> Answer: Yes, it would.

There is no further explanation by the owner of the property for the court to base a judgment that the NN Route would be the least inconvenient to the property owners. It provides only the conclusion and opinion of the property owner that the NN Route would be the least inconvenient.

The testimony of Defendant's son, Robert Mantel, Jr., does little to assist in determining the convenience of the routes. Robert Mantel, Jr. testified that though the NN Route was passable only by a tractor or a pretty good-sized four-wheel drive vehicle because of the brush, that it was the route that caused the least inconvenience to the cattle operation. He testified the NN Route was off to one side of the operation which was not used very often and the choice of the NN Route would reestablish good will with the neighbors on the west side of the property. He did not explain at all how the West Route interfered in any way with the cattle operation, nor did he explain how the neighbors' good will was imperiled by the choice of any other route.

None of Defendant's explanations suffices to establish a misapplication of the

---

road that is situated so as to do as little damage or injury and cause as little incon-

law with the choice of the West Route, especially since the court had contrary expert testimony, which indicated that the NN Route contained severe terrain that could not be developed into a reliable roadway that was reasonably practical to construct and maintain. When coupled with the evidence that Robert Mantel, Sr. acknowledged to Plaintiffs' expert that the NN Route was not constructible, we can find no error in the choice of the West Route. Defendant's Point V is denied.

██ Finding no error that the West Route was the appropriate route for the road, we next turn to Defendant's Points II and III as they are entwined on the issue of whether the West Route should have been limited to a twenty-foot width as opposed to the designated forty-foot width. Specifically, Point II challenges the trial court's refusal to allow Defendants to amend their response to the pre-trial order to change their initial response that a forty-foot road was acceptable whereas Point III challenges the determination that the road should be forty-feet wide. Amendments are allowed very liberally when justice requires, however, the trial court is given broad discretion whether to allow such amendments. *Southwestern Bell Yellow Pages, Inc. v. Wilkins*, 920 S.W.2d 544, 550 (Mo.App. E.D.1996). We will not disturb a decision not to allow amendments absent an abuse of discretion. *Id.* The trial court, although refusing to allow Defendants to amend their response to the pretrial order, did allow testimony regarding the appropriateness of a forty-foot road versus a twenty-foot road. Therefore, the court had before it evidence on that issue. Furthermore, in its judgment, the court found "that the private road on the West Route should be forty-feet wide.

---

venience as practicable to the defendants.

That finding is reached independently of the Defendants['] Response to the Pre–Trial Order and Defendants['] trial exhibit, 'Defendants['] Exhibit V.' " We find no abuse of discretion in the refusal of the trial court to allow an amendment to the pretrial order on the day set for trial because we find no prejudice to Defendants. Point II is denied.

■ As to the issue of whether the establishment of the forty-foot private road was against the weight of the evidence and not supported by substantial evidence, we note the trial court's detailed findings:

[The forty-foot width] is based upon the evidence of the anticipated usage, the existing easements, the terrain, the several ninety degree turns and the believable and credible expert testimony.

The Court finds that: (A) Forty foot width is necessary to practically accommodate shared usage of the portion encumbered with the two thirty[-]foot easements for ingress and egress; (B) forty[-]foot width is necessary to permit practical usage at the numerous turns; (C) forty[-]foot width is necessary to permit grading and filling on the portions with side slopes and the sink hole to construct a practical private road; And, (D) forty foot is necessary to accommodate meeting trucks on such a lengthy private road.

Plaintiffs presented evidence of usages contemplated for the private road not mentioned in the first trial in 2000. The movement of lengthy trucks and an occasional mobile home also requires a forty[-]foot width, e[s]pecially on the turns.

The only other route, which could be made practical by widening, is the Middle Route. That route is not convenient to Defendant[s] because it goes through Defendants['] pastures. Defendant[s] obtained a deed in their name describing the West Route at forty feet wide to avoid a route through their pasture. They also obtained and offered a forty foot wide NN Route. The determination of a forty[-]foot width for the West Route appears to have been anticipated.

Consistent with such an expectation, Defendants make no request to use a private road on the West Route. At a forty[-]foot width they will not own land bordering the private road. Therefore, Defendants will not be granted a right to use or be given a duty to construct and maintain the private road.

Defendant contends in her point relied on that "both experts" testified that the standards they used for the design of a road of this type designated a width of less than forty feet; Defendant then argues that the route should range from a twenty-foot radius at corners to fifteen feet for the rest of the route. Defendant cites the testimony of her expert, Mr. Scott, to support a conclusion that a fifteen-foot easement would have been sufficient to build the recommended size of roadway for a road with 100 vehicles or less per day based on standards set in a national design guide; however, Defendant's expert acknowledged that the road would have to have a thirty or thirty-five-foot inside radius for an 18–wheeler–type vehicle to make the corners. Furthermore, he testified the roadway must have a passing lane every 1000 feet and must be widened to thirty feet in width at a distance of sixty feet away from the corners.

Plaintiff, Mike Matthews, contradicted the conclusions of Defendants' experts by stating that the logging business would use large trucks to cut, remove and market logs; he stated he would need a full forty feet in width for the road in order to get the trucks around the several corners and to be able to pass each other because there will be only a single passage in and out.

Plaintiffs' expert, David Nelson, while using the same "Green Book" produced by the American Association of State Highway Officials, Transportation Officials to arrive at his conclusions, testified a fourteen-foot wide driving surface with one-foot ditches on the side would normally be adequate for a logging road; however, if the road was to be used by large trucks and possibly for the passage of one or more mobile homes and considering there would be four ninety-degree turns to negotiate, the full forty feet was necessary to accommodate the traffic.

As noted above, Defendants first proposed the forty-foot roadway, which was subsequently adopted by the court, and never submitted a description of a proposed route that would have been wide enough at the corners to permit the passage of the large trucks and mobile homes yet narrowed in straight stretches of road. Defendants simply wanted the roadway to be limited to fifteen to twenty feet, which was not feasible by the testimony of any expert. Giving deference to the trial court to assess the credibility of the witnesses, we find sufficient evidence supports the trial court finding forty feet to be the appropriate width of the private road. Defendant's Point III is denied.

■ Defendant finally contends that the trial court erred in its application of the law when it refused in its final order to require Plaintiffs to maintain a fence along the private road. Defendant claims the determination of the necessity of gates and fencing along the private road was not considered by the Commissioners as damages because the fencing was not addressed in the interlocutory order nor were any instructions on fencing responsi-

bilities given to the Commissioners prior to the award of damages. Defendant further argues that pursuant to section 228.352, the court should have determined the responsibilities of the parties as to fencing and cites to the language in that section which provides that the court shall designate which party or parties shall be responsible for the construction, maintenance and repair of the private road and sets out the nature and scope of the parties' rights to the use of the enjoyment of the private road as authority that the court must set out the rights and responsibilities of the parties as to appurtenances connected to the road, such as fences and gates.

■ The trial judge noted the Commissioners' award of damages made allowance for those concerns. Indeed, the Commissioners specifically stated they considered the benefit to be derived by the owner as well as damages sustained. Moreover, Defendant fails to cite any case to support her proposition that the trial court had a duty to determine where fences and gates should be located and who should pay for them.[6] Equally troubling is that Defendants failed to present any evidence at trial that would have supported any orders of the trial court to provide for fences and gates, thus, the trial court would have based such orders on pure speculation. The first time this issue appears to have been addressed by Defendants was after trial and after the interlocutory order was entered, and after the Commissioners had assessed damages. Prior to the entry of the final judgment, Defendants filed a Motion to Amend Order Determining Location of Private Road requesting that the trial court include a provision in the order for the construction of gates and fences.

---

**6.** We note that prior to the repeal of section 228.370 in 1991, the statute did provide that the Commissioners were to file a report, including an assessment of the items of damages sustained by each person through whose land said proposed road passed, including the erection of fences and the kinds of fences to be erected.

Defendants' motion to amend the order to include an order for the construction of gates and fences did not include any specific requests and was, in effect, a motion to take evidence after the trial on that issue. We cannot convict the trial court of any error for matters not properly brought to its attention. *Williams v. Greene County Sheriff's Dept.*, 94 S.W.3d 450, 454 (Mo. App. S.D.2003). In essence, Defendants were requesting a new trial on this issue.

 A trial court is allowed broad discretion in deciding whether to reopen a case to allow the admission of additional evidence. *Foster v. Village of Browningtton*, 76 S.W.3d 281, 287 (Mo.App. W.D. 2002). It is an abuse of discretion when the trial court refuses to reopen the case for material evidence; evidence which would substantially affect not only the merits of the action, but the trial court's decision as well. *Hill v. Boyer*, 72 S.W.3d 284, 286 (Mo.App. S.D.2002). The court's denial of Defendants' motion to amend the order for a determination of the construction of gates and fences filed after the trial of this case was not in error. Point V is denied.

We reverse the judgment of the trial court and amend paragraph 2 of the judgment to read, "Defendants shall not have a right to use the private road and shall not have a duty to construct or maintain the private road." In all other respects, the judgment is affirmed.

PREWITT, J., concurs.

GARRISON, P.J., concurs in result only.