In the Interest of C.F., C.F., and R.F., children under seventeen years of age.

McDonald County Juvenile Office and Missouri Children's Division, Petitioners–Respondents,

v.

G.F., Respondent–Appellant.

Nos. 27906, 27907 and 27908.

Missouri Court of Appeals, Southern District, Division One.

March 22, 2007.

Janice L. Durbin, Anderson, for appellant.

Belinda K. Elliston, Lamar, for respondent McDonald County Juvenile Office.

Gary L. Gardner, Jefferson City, for respondent Missouri Children's Division.

Anne R. Wells, Neosho, for Juveniles.

NANCY STEFFEN RAHMEYER, Presiding Judge.

G.F. ("Father"), the biological father of C.F., born April 5, 1995, C.F., born June 30, 1996, and R.F., born April 26, 1999, appeals from a trial court order terminat-

ing his parental rights.[1] Father raises two points on appeal: first, he claims the trial court erred in proceeding with the termination prior to making a determination that the tribal court had declined jurisdiction over the children; and second, that the trial court erred in finding that Appellant had abandoned his children. We deny both points and affirm the judgment of the trial court.

■ There is no question that, if the Indian Child Welfare Act of 1978 ("ICWA") applies to any child, its provisions are mandatory under federal law. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 36, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (stating that the ICWA's "procedural safeguards include *requirements* concerning notice and appointment of counsel; parental and tribal rights of intervention and petition for invalidation of illegal proceedings; procedures governing voluntary consent to termination of parental rights; and a full faith and credit obligation in respect to tribal courts") (emphasis added); *see also State ex rel. S.D.C.,* 36 P.3d 540, 542 n. 2 (Utah Ct.App.2001) (noting that "[f]or a termination petition to succeed, state law requirements must be met in addition to [the] ICWA requirements"); *In re M.S.,* 624 N.W.2d 678, 681 (N.D.2001) (stating that both the state law and the ICWA requirements for termination of parental rights must be followed because M.S. is an "Indian child" under the Act).

■ Section 1912(a) of the ICWA states in pertinent part,

In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child ***shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.***

25 U.S.C. § 1912(a) (emphasis added). It is essential that the provisions of the ICWA be followed. *In the Interest of J.W.,* 498 N.W.2d 417, 419 (Iowa Ct.App. 1993). In the event that the proceedings fail to comply with that Act, then the termination may be subject to attack under 25 U.S.C. § 1914, which provides:

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914. Thus, "[i]f we were to affirm a termination order not in compliance with the Act, the State could offer prospective adoptive parents no assurance this termination and a subsequent adoption could not be invalidated." *In the Interest of J.W.,* 498 N.W.2d at 419. In addition, there is authority that failure to give adequate notice to the tribes divests a state court with jurisdiction. *Id.; In re N.A.H. and K.A.H.,* 418 N.W.2d 310, 311 (S.D.1988); *In re L.A.M.,* 727 P.2d 1057, 1061 (Alaska 1986); *Contra In the Interest of S.A.M.,* 703 S.W.2d 603, 606 (Mo.App. S.D.1986) (stating "that even if the trial court erred in its ruling that the [ICWA] did not apply, such an error did not divest

---

**1.** The parental rights of the biological mother, E.F. ("Mother"), were also terminated; however, she does not appeal. The facts relevant to Mother's termination will be recounted only as they bear on the decision to terminate Father's parental rights.

the trial court of jurisdiction"); *State ex rel. Juvenile Dept. of Multnomah County v. Charles,* 70 Or.App. 10, 688 P.2d 1354, 1360 n. 5 (1984) (noting that "[i]f a state court, as opposed to a tribal court, properly has jurisdiction over the subject matter, the court is not divested of jurisdiction simply because it fails to comply with the [ICWA]").

■ C.F., C.F., and R.F. are Indian children pursuant to the ICWA. " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). All of the children in this case were unmarried and under the age of eighteen at the time of the proceedings. The trial court found that father is Choctaw and paternal grandmother is Chickasaw; it further found that the ICWA applied. None of those findings are challenged in this appeal. Thus, pursuant to 25 U.S.C. § 1903(5)(a), the children are subject to the ICWA by virtue of their registration as enrolled members of the Choctaw Tribe.

## Point I

Father's first point relied on claims that a petition was pending in the Chickasaw Nation—Court 'of Indian Offenses, Bureau of Indian Affairs, at the time of the termination hearing. The only reference in Father's brief to such a petition was in his first point relied on. There are absolutely no facts referenced regarding any pending petition, nor is there even any indication what kind of petition may have been pending. Father's brief is less than clear about whether the children are actually enrolled members of the Chickasaw Tribe. In Fa-

ther's Statement of Facts, he claims "[t]he minor children are enrolled members of the Chicksaw Tribe." In his argument, however, he asserts "[a]ll three of the children in question are enrolled members of the Choctaw Nation." Whether the children were at one time members of the Chickasaw Tribe does not change our analysis as the evidence indicated that both tribes were given notice pursuant to 25 U.S.C. § 1912(a).

■ Father's argument claims "[t]he record is deficient, however, in discussing whether and what kind of notice the Tribe received.... The absence in the record of evidence of said notice to the Tribe runs counter to the purpose of [the] ICWA and to the law." Although the record is hardly an example of clarity regarding the issue of notice to the Indian tribes, under our standard of review, we find it meets the minimum level of evidence necessary. This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or erroneously declares or applies the law. *In re S.T.C.,* 165 S.W.3d 505, 511 (Mo.App. S.D.2005). Furthermore, we review the evidence, and all inferences therefrom, in the light most favorable to the judgment. *Anderson v. Mantel,* 171 S.W.3d 774, 777 (Mo.App. S.D. 2005).

■ First, we note the court found that notice had been given to both tribes. The evidence supporting that determination includes testimony that in compliance with the ICWA notice was sent to both the Chickasaw and Choctaw Tribes by the juvenile office on November 23, 2005, and that the notice included a cover letter and copy of the parental rights petition that had been filed.[2] A second notice was sent

---

2. Certainly, a better practice would be to introduce into evidence the actual letter to the tribes and the certified mail receipt.

by certified mail on March 6, 2006, to both tribes and neither letter was returned as undeliverable to the juvenile office. Furthermore, the Choctaw Tribe supervised the children in their placement. Two letters were admitted into evidence from a representative of the Choctaw Tribe approving the termination, the current placement, and future adoption by their caretaker. We find substantial evidence in the testimony and the admitted letters to support the court's findings concerning notice and compliance with the provisions of the ICWA. Point I is denied.

### Point II

█ Father contends in his second point that the trial court erred in finding he abandoned his children. In the order, the trial court set forth five statutory grounds for the termination: abandonment pursuant to § 211.447.4(1);[3] abuse or neglect by reason of a severe act of physical abuse pursuant to § 211.447.4(2)(c); abuse or neglect by reason of repeated and continued failure to provide adequate support pursuant to § 211.447.4(2)(d); failure to rectify the conditions that led to the court's assumption of jurisdiction and/or conditions of a potentially harmful nature continue to exist pursuant to § 211.447.4(3); and parental unfitness pursuant to § 211.447.4(6). The trial court also found that terminating Father's parental rights was in the best interests of the children pursuant to § 211.447.6.

Despite the fact that the trial court found five statutory bases for terminating his parental rights, Father only appeals the court's findings with respect to § 211.447.4(1), namely that Father abandoned C.F., C.F., and R.F. Father does not, however, challenge the four other grounds set forth in the order terminating his parental rights.

█ When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment, this Court need only find that one of the statutory bases was proven and that the termination was in the best interests of the child. *In re T.F.S.*, 52 S.W.3d 44, 48 (Mo.App. S.D.2001). "Thus, if an appellant fails to challenge each of the termination grounds found by the trial court, it is unnecessary for the appellate court to address the specific ground that is challenged." *In re B.N.W.*, 115 S.W.3d 869, 871 (Mo.App. S.D.2003). Because the termination of parental rights is one of the most serious acts a court is empowered to perform, we have reviewed the evidence *ex gratia* to determine whether the juvenile officer established at least one ground for termination by clear, cogent, and convincing evidence.

Pursuant to § 211.447.4(2), one of the grounds the trial court found for terminating Father's parental rights was for committing a severe act of physical abuse toward a child in the family. Father was convicted for "Injury of Minor Child (Child Abuse) After Two Previous Convictions" in Bryan County, Oklahoma, case number CF–98–374, for beating C.F., who was three years old at the time, with a leather strap. Father's sentence in the Oklahoma Department of Corrections was enhanced to twenty years due to prior felony convictions. At the termination hearing, Father's judgment and sentence for this conviction was admitted into evidence without objection.

Additionally, pursuant to § 211.447.6, the trial court also found that the termination was in the children's best interests in that: they have no emotional ties to Father with whom they have had no contact for eight years; Father has not main-

---

**3.** All references to statutes are to RSMo 2000, unless otherwise indicated.

 

tained regular contact with them; Father has not paid anything for the care and maintenance of them when financially able to do so; because Father does not have a release or parole date it is unlikely that additional services would be likely to bring about lasting parental adjustment enabling a return of the children to Father; Father's felony conviction is of such a nature that the children will be deprived of a stable home for a period of years; and Father's act of abusing C.F. subjected the children to a substantial risk of physical or mental harm. These children have been in the care of the McDonald County Children's Division since June 2002. At the time of the termination hearing, the children were living with their uncle in Oklahoma, who has expressed an interest in adopting them. Clear, cogent and convincing evidence supports the termination. Accordingly, we find no error in the trial court's decision to terminate Father's parental rights to C.F., C.F., and R.F. Point II is denied.

The judgment is affirmed.

PARRISH, J., SCOTT, J., concur.